**HELVERING v. NEW HAVEN & S. L. R. CO., Inc.**

**No. 227.**

Circuit Court of Appeals, Second Circuit.

July 16, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

Walter J. Brobyn, Edgar J. Goodrich and Neil Burkinshaw, all of Washington, D. C., (Guggenheimer & Untermyer, of New York City, of counsel), for respondent.

John E. Hughes, of Washington, D. C., amicus curiæ.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The Commissioner assessed deficiencies against the taxpayer because he took a lower "basis" for the depreciation of its property than it had taken, and the only question is whether the proper "basis" was the value when the property was conveyed to the taxpayer on July 26, 1934, or when a predecessor company acquired it in 1923. The facts upon which that question depends were agreed upon by stipulation and were as follows. The predecessor company was incorporated in 1923 and operated, first a trolley line and afterwards a line of busses; by 1931 it had become insolvent and a committee of its bondholders ($461,-000 had been issued) was formed, with whom more than 95% of the bondholders deposited their bonds. These had been secured by a mortgage, which the trustee filed a bill to foreclose in a state court of Connecticut. While this was pending the committee put forward a plan of reorganization, proposing that it should bid in the property at the foreclosure sale (presumably paying for it by endorsing a credit upon the bonds) which when acquired it should convey to a new company to be organized, in exchange for the new company's common shares—5000 in all. These shares the committee would then distribute to the bondholders in proportion of one share for each $100 of the principal and past due coupons. Substantially all the bondholders agreed to the plan and the court sold the property at foreclosure for $60,000. The committee bid it in and transferred it to the taxpayer in exchange for its shares which the committee then distributed as planned. The property was valued at about $72,000 against which there were debts of about $12,000; it is to be assumed, though the parties did not expressly so stipulate, that long before 1934 the shares of the predecessor company had lost all value. Both sides agree that § 113 (a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 696, determines the "unadjusted basis" to be used in computing depreciation (§ 114(a), 26 U.S.C.A. Int. Rev.Acts, page 701, but the taxpayer argues that the "basis" is the cost of the property to the predecessor company (§ 113(a) (7), 26 U.S.C.A. Int.Rev.Acts, page 698, while the Commissioner argues that § 113(a) (8) (A) controls, because after the bondholders' committee bid in the property, its sale to the taxpayer was within § 112(b) (5), 26 U.S.C.A. Int.Rev.Acts, page 692, not being part of any "reorganization"; and that, if so, the proper "basis" was the cost to the committee, i. e. the value of the property when it was bid in.

We have no doubt that there was a "reorganization" under § 112(g) (1) (B), 26 U.S.C.A. Int.Rev.Acts, page 695. The taxpayer acquired "in exchange solely for

all * * * its voting stock * * * substantially all the properties" of its predecessor. It is true that the taxpayer did not deliver its shares to the predecessor, but to the predecessor's bondholders; but the section does not declare that the buyer must deliver to the seller; only that the buyer shall acquire the properties from the seller in exchange for the buyer's shares. It would be a peculiarly fatuous formality to require the shares to pass through the seller to its shareholders; and the Commissioner does not so assert. He does, however, argue that the new shares must pass to the old shareholders unless the seller company itself retains them, and for this he relies upon LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355. That case arose under the Act of 1928, which was somewhat differently worded, and it held that, when a buyer paid for the property in its bonds, there was not that "continuity of interest" which a "reorganization" demanded. It would seem to follow that even where the buyer pays in its shares, there can be no "reorganization" if the shares go to a solvent seller's bondholders. Such a transaction would indeed be a fraud upon the seller's shareholders if it stripped itself of all its assets; but in addition there would be no "reorganization" because the bondholders would receive a different interest in the property from what they had had before, and it was this circumstance, as we understand it, which was determinative in LeTulle v. Scofield, supra, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355.

The crux of the case at bar is therefore whether, since the seller was definitively insolvent—that is to say, since its shares could not possibly have any value—the bondholders were to be regarded as surrendering the same interest that they got back in the form of shares in the buyer. Did the seller's insolvency provide the required "continuity of interest"? That question has come up five times, under the Act of 1928 or the Act of 1934, either as a question of "recognizable" gain or loss, or of depreciation. Three circuit courts of appeal have held that there was a "reorganization"—one of them since LeTulle v. Scofield, supra, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, was decided. Commissioner v. Kitselman, 7 Cir., 89 F.2d 458; Commissioner v. Newberry L. & C. Co., 6 Cir., 94 F.2d 447; Commissioner v. Southwest Consolidated Corp., 5 Cir., 119 F.2d 561, and Commissioner v. Alabama

Asphaltic Co., 5 Cir., 119 F.2d 819. The Ninth Circuit has, however, held otherwise, Commissioner v. Marlborough House, Inc., 9 Cir., 118 F.2d 511. It seems to us that the majority has been right. Certainly LeTulle v. Scofield, supra, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, had no such question in mind, in spite of its including Commissioner v. Kitselman, supra, in the note on page 420 of 308 U.S., on page 316 of 60 S.Ct., 84 L.Ed. 355; it very explicitly put the decision on the fact that creditors, no matter how distant might be the maturity of their debts, had no interest in the debtor's property, even though they were secured by a lien. The reason is not far to seek. Debts are payable in money and give creditors neither power to control the debtor's property, nor any concern with its vicissitudes while the debtor remains solvent; they do not share in his gains, or suffer from his losses. A change of their interest as creditors into an interest as owner, or vice versa, is therefore a "realized" gain or loss; what they receive is for practical purposes different property from what they give up. This ceases, however, as soon as the debtor becomes irrecoverably insolvent and the debts are due; the creditors are then entitled to control the property, and thereafter its adventures are their own. The debtor loses any rightful power to dispose of it except for an adequate price, and courts like to speak of him as a "trustee"; all that is necessary to make them complete legal owners is that they shall follow the prescribed legal formalities. The purpose of such statutes as § 112 was to make mere formal changes immaterial either for gain or loss; if the taxpayer's succeeding interest was for practical purposes the same, the Act wished to treat any change of value as "unrealized" in accordance with the underlying presupposition of the income tax throughout, that variations in the value of property are negligible unless they take form in some substantially new interest. The changes in the case at bar were not of that kind; the bondholders were as much the owners before foreclosure as after; the decree and the sale did nothing but recognize officially what had before been true in fact.

If there was a "reorganization," § 113(a) (7) applied, because "an interest or control" in the property "of 50 per centum or more remained in the same persons." Conceivably it could be argued that the "control" remained in the old shareholders un-

988

til the foreclosure sale, though we should hesitate to say so; but, however that may be, if the bondholders had that "continuity of interest" which is necessary for a "reorganization," it was because they had acquired the entire "interest" in the property while they were bondholders.

■ As for the effort of the Commissioner to atomize the plan, as it were; i. e. to separate it into its several steps and treat the last as though it stood alone, it has been repeatedly repudiated. Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309; Bassick v. Commissioner, 2 Cir., 85 F.2d 8; Helvering v. Elkhorn Coal Co., 4 Cir., 95 F.2d 732; Snowden v. McCabe, 6 Cir., 111 F.2d 743.

Order affirmed.