### EXPOSITION SOUVENIR CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 245, Docket 20230.

Circuit Court of Appeals, Second Circuit.

July 8, 1947.

284

Eugene Frederick Roth, of New York City, for petitioner.

Sewall Key, Acting Asst. Atty. Gen., Lee A. Jackson and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether a loss sustained by the taxpayer on the sale of New York World's Fair debentures, which it purchased as a condition precedent to obtaining souvenir and post-card concessions at the Fair, should be considered a long-term capital loss or a business expense in computing the taxpayer's excess profits tax for the fiscal year ending May 31, 1941.

The facts as found by the Tax Court are as follows: The taxpayer, a New York corporation, was organized in 1938 for the purpose of acquiring and operating concessions for the sale of souvenirs, novelties and post-cards at the New York World's Fair to be held in 1939. The Fair was conducted by New York World's Fair 1939 Incorporated, a corporation organized not for profit under the laws of New York, and was financed by the sale of debentures payable out of gate receipts. These debentures were to mature January 1, 1941 and to bear 4% interest. Some $27,000,000 of them were sold to concessionaires and to business firms in the New York area. Bidders for concessions at the Fair were required to agree to purchase debentures and, other things being equal, the concession contracts or leases were awarded to the bidder who agreed to buy the largest amount of debentures. In order to secure the desired concessions the taxpayer purchased $130,000 of the debentures for cash of that amount. The concessions were awarded to it for 1939, and were renewed for the following year when it was decided to reopen the Fair in 1940. They would not have been awarded to the taxpayer if the debentures had not been purchased, nor would they have been renewed if the debentures had been sold before the Fair reopened in May 1940. The concessions were operated profitably by the taxpayer while the Fair was in progress in 1939 and 1940. It ended in October of the latter year. The purchased debentures were treated as investments on the taxpayer's books and in its tax returns. Interest paid thereon was reported as income and payments aggregating about $30,000 made on account of principal during 1939 and 1940 were shown as reductions in the amount of the investment. In April 1941 the taxpayer sold the debentures for some $7,500, sustaining a net loss on the transaction of about $92,000. The Tax

Court concluded that the debentures owned by the taxpayer were capital assets acquired to enable it to obtain concessions at the Fair; that their purchase was a capital expenditure and they were not held for sale to customers in the ordinary course of business. Accordingly it sustained the Commissioner's ruling that the loss sustained on their sale was a long-term capital loss and excluded from the computation of excess profits taxes by section 711(a) (2) (D) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Acts, page 24, § 711. This resulted in the deficiency of which the petitioner complains.

Section 117(a) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 117(a) (1), defines "capital assets" as "property held by the taxpayer (whether or not connected with his trade or business)" with certain specified exceptions. It is not denied that the debentures were "property," but the taxpayer contends that they fall within the exceptions as either (1) "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" or (2) "property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l)."

■ As to the first exclusory clause, the Tax Court made an express finding that the debentures were not held for sale in the ordinary course of business. That is a question of fact. See Fuld v. Commissioner, 2 Cir., 139 F.2d 465; Van Suetendael v. Commissioner, 2 Cir., 152 F.2d 654; Reynolds v. Commissioner, 1 Cir., 155 F.2d 620. Upon this record we cannot upset the finding. There is no evidence of any attempt to sell the debentures, or any of them, before the sale of all after the Fair was over and when they were in default. They were treated as investments upon the taxpayer's books and tax returns. The reasonable inference is that when they were purchased the taxpayer intended to hold them until they matured. The case of Gilbert v. Commissioner, 1 Cir., 56 F.2d 361, upon which the taxpayer particularly relies, is readily distinguishable. There the taxpayers accepted shares of preferred stock in payment for their services as engineers and contractors; the stock was entered on their books as income and shown as such upon their tax returns; and there was an express finding that they did not receive the shares with any intention of holding them but intended to convert them into cash as soon as possible.

■ Whether the contention now advanced under the second exclusory clause above quoted was made below does not appear; and the opinion of the Tax Court does not mention it. Assuming that it is open for our consideration, we think it is without merit. No authority is cited in support of the proposition that the allowance for depreciation provided in section 23(l) is applicable to bonds or other securities. The Bureau of Internal Revenue has for many years[1] issued an interpretation to the contrary. The debentures were not a "wasting" asset for their payment was to be made at maturity and would be whatever the debtor was able to pay at that time.

■ The taxpayer further contends that the loss sustained on the sale of the debentures constituted an ordinary and necessary business expense under section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1) (A). It argues that to infer that the debentures were purchased as an investment is unreasonable. There was no chance of a capital gain as payment in full would return only their cost; they were bought only for the purpose of obtaining the desired concessions, and the Tax Court itself stated in its opinion that "The only reasonable inference is that petitioner hoped to make sufficient profits in its operations at the Fair to offset any loss incurred by reason of its purchase of the debentures." Hence, it is urged, we should hold that the loss was an additional consideration for the concessions and therefore an ordinary business expense —as it would have been had the taxpayer paid a $92,000 bonus for securing the lease. The difficulty is that the transaction was

---

[1] Treasury Department, Bureau of Internal Revenue, Bulletin "F", Depreciation and Obsolescence (1920), p. 6; Idem. (Revised January 1931), p. 23; Idem. (Revised January 1942), p. 88.

not like a cash bonus either in form or substance. True, the purchase was part of the consideration for the lease; but the money paid for the debentures was not. Cash of $130,000 was exchanged for debentures of a like amount. Both in form and substance this was an investment; a risky one to be sure and motivated not by a desire to make capital gains or to earn 4% interest but by the desire to acquire the concessions, but none the less an investment since money was exchanged for property, i.e., the debentures. Nor is it possible to divide the $130,000, and say that part was paid for the debentures and part as a bonus for the concession contracts, since there was no evidence as to the market value of the debentures at the date of their purchase. Hence the Tax Court was right in holding that the purchased debentures were a capital asset and that the loss sustained upon their sale was not an ordinary and necessary business expense.

 Finally the taxpayer contends that even if the debentures are properly to be regarded as capital assets, it is entitled to take as a deduction in its 1941 return an aliquot part of its loss. It relies upon section 29.23(a)-10 of Regulations 111 which provides: "If a leasehold is acquired for business purposes for a specified sum, the purchaser may take as a deduction in his return an aliquot part of such sum each year, based on the number of years the lease has to run."

This argument proceeds on the premise that since the debentures were purchased in order to acquire the concessions, the amount of the taxpayer's loss when determined by their sale became the sum paid for acquiring the concession contracts. We do not think the regulation is applicable to the situation here disclosed. As the previous discussion has already shown, no "specified sum" was paid for acquiring the concession contracts. The regulation apparently contemplates a situation where a definite sum paid to acquire a leasehold can be amortized year by year throughout the term of the lease. In the present case the amount of the loss could not be known until after the lease had terminated. It was not a sum paid to acquire the concession but to acquire the bonds. The taxpayer saw fit to buy

what the law regards as "property" in the same sense that any negotiable security is property. It was a capital asset as defined in the Revenue Act and the loss sustained upon the sale of it was a long-term capital loss. Accordingly the decision of the Tax Court is affirmed.