WESTERN WINE AND LIQUOR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23346.   Promulgated September 24, 1952.

*James W. R. Brown, Esq., James J. Fitzgerald, Jr., Esq.,* and *Arthur F. Frank, C. P. A.,* for the petitioner.
*Marvin E. Hagen, Esq.,* for the respondent.

1094

OPINION.

TIETJENS, *Judge:* Shall we for tax purposes split what is obviously an integrated transaction into a series of splinters; in other words, "atomize" the transaction, as put by Judge Learned Hand in *Helvering* v. *New Haven & S. L. R. Co.*, 121 F. 2d 985, or shall we look to what we consider to be the "substance" of the plan and "view it as a whole"?

Respondent's position is that the purchase and sale of the stock was one transaction and the acquisition and sale of the whisky was another and that the two are not to be treated as one; that taxpayer sustained a short term capital loss on the sale of the stock and that the basis for the whisky was the amount paid for it alone, $59,431.64, since the taxpayer paid that amount for the whisky and $262,762.10 for the stock. If taxpayer sustained a short term capital loss it would not be allowable as a deduction because of the provisions of section 117 (d) (1).

We think the taxpayer's view leads to the fair and equitable result in the present case. Furthermore, as the Court of Appeals for the Sixth Circuit said in *Commissioner* v. *Ashland Oil & Refining Co.*, 99 F. 2d 588, at page 591:

* * * the courts have recognized that where the essential nature of a transaction is the acquisition of property, it will be viewed as a whole, and closely related steps will not be separated either at the instance of the taxpayer or the taxing authority.

The testimony and evidence establish that this taxpayer purchased the Distilling stock, not as an investment in stock, but only to acquire more whisky to replenish its inventories in order to sustain its business. In the words of taxpayer's president:

We found ourselves confronted with very little stocks, very low stocks on hand, and the distiller—in fact, all the distillers had cut down their allowance to us very materially. * * * we were confronted with procuring merchandise or having to practically close up our Western Wine and Liquor division because * * * we could not keep our men on the road if we did not have applies for them. * * * the value of the stock had nothing to do with it.

We were interested in procuring this whisky to keep our organization intact. * * * We simply purchased the stock to get the whisky and the minute we had received the whisky, we were going to sell and dispose of the stock. * * * That is what we did.

This testimony sums up the position. It also epitomizes the "substance" of the transaction and there is nothing in the record which would demand a contrary conclusion.

The Commissioner relies strongly on *Harry Sackstein*, 14 T. C. 566; *Exposition Souvenir Corporation* v. *Commissioner*, 163 F. 2d 283, (affirming a Memorandum Opinion of this Court) and *Logan & Kanawha Coal Co.*, 5 T. C. 1298. Taxpayer has undertaken to distinguish each of these cases, and we think it has successfully done so.

In *Sackstein*, the taxpayer was a stockholder in United Meat Company, Inc., and had made certain payments to that company. The question was whether the payments were "contributions to capital" or payments for the purchase of meat. We said, in part:

Sackstein's testimony indicates that the payments were contributions of additional capital to make up for that lost by United in its operations. * * * Sackstein was told by Present that he could expect calls for additional capital contributions in proportion to meat purchased, but whether the actual payments were in proportion to meat purchased from United is not at all clear. * * * The record as a whole does not show how the amounts paid were determined to be due, how they were recorded on its books by United, or how they were used by United. A finding that these payments were ordinary and necessary expenses paid or incurred in carrying on the business during 1945 can not be made from the evidence.

The record does not justify any change in the determination of the Commissioner.

The decision against the taxpayer was based largely on a lack of proof. Here, we think the proof overwhelming that the payments made for the stock less the amount realized from sale of the stock was in fact part of the cost of the whisky acquired by taxpayer.

In the *Exposition* case, the taxpayer, in order to qualify as a bidder for a concessions contract at the New York World's Fair, purchased sometime prior to May 1939, debentures of the New York World's Fair 1939, Inc., in the amount of $130,000. Taxpayer obtained the concession and operated it until the Fair closed in October 1940. In April 1941 taxpayer sold the debentures at a loss. The Court of Appeals in affirming a Memorandum Opinion of this Court said, at page 285, 163 F. 2d:

* * * the Tax Court made an express finding that the debentures were not held for sale in the ordinary course of business. That is a question of fact. * * * Upon this record we cannot upset the finding. There is no evidence of any attempt to sell the debentures, or any of them, before the sale of all after the Fair was over and when they were in default. They were treated as investments upon the taxpayer's books and tax returns. *The reasonable inference is that when they were purchased the taxpayer intended to hold them until they matured.* * * * [Emphasis added.]

Here, we find nothing in the record to justify an inference that the taxpayer intended to hold the stock as an investment. It was sold as soon as practicable after the whisky rights were obtained and realized on and we have found as a fact that the disposition of the shares was made in the ordinary course of taxpayer's business.

In the *Logan & Kanawha* case the company bought stocks of various coal companies for which it was a sales agent, in order to maintain favorable relations. The stocks were true investments even though sometimes resulting in losses. The facts required a holding that the shares of stock purchased by the taxpayer constituted a capital investment and that a capital loss was sustained on sale of the shares. We can not so find here.

At the same time, while we recognize that the cases relied on by the taxpayer can be distinguished on the facts or because of the different sections of the Code involved, we nevertheless think the principles of those cases may properly be applied here in favor of taxpayer.

The case of *Tube Bar, Inc.*, 15 T. C. 922, is one of those. There a corporation operating a bar had its liquor license revoked. The public officials involved indicated that if a new corporation were formed they would approve a transfer to it of a license from an existing licensee  Such a licensee was found. A new corporation was formed which acquired the premises, fixtures, and license for a lump sum of $4,950, had the license reissued to it, and then sold the premises and fixtures for $3,000. The question was whether the loss was deductible. This Court held, however, that the purchase and sale of the property were incident to and but a step in acquiring a liquor license and the loss was, in substance, a part of the cost of acquiring the license. The taxpayer here persuasively paraphrases the language of this Court in the *Tube Bar* case as follows:

Respondent seeks to have us treat the purchase and sale as transactions having no relation to the acquisition of the whiskey; whereas, Petitioner's view is that the acquisition of The American Distilling Company stock was merely incidental to the purchase of the whiskey, and accordingly, the amount should be regarded as part of the cost of the whiskey. The question should not be considered without the surrounding facts. So considered, more appears than an isolated sale of The American Distilling Company stock.

Petitioner's intention at all times was to acquire whiskey with which to conduct its wholesale liquor business. A supply of whiskey being essential, Petitioner was willing to purchase The American Distilling Company stock not required in its business in order to have a supply of merchandise for sale. The whiskey was its ultimate objective, and the acquisition of the stock was merely incidental thereto. Under the evidence, a supply of whiskey could be secured only by purchasing The American Distilling Company stock. Obviously, here the stock was obtained only in order to secure the whiskey, and was a mere incident. The unimportance of the stock is shown also by the sale thereof as soon as the whiskey was obtained. It is evident that the purchase and sale of the stock were mere steps of a single transaction to obtain a supply of whiskey to operate a wholesale liquor business.

Here, instead of a purchase of stock in connection with which whiskey was received, there was, in substance, a purchase of the whiskey, with the stock incidental thereto.

See also *Commissioner* v. *Ashland Oil & Refining Co.*, *supra*, and *Prairie Oil & Gas Co.* v. *Matter*, 66 F. 2d 309.

We think this taxpayer acquired the Distilling stock incident to the conduct of its business and not for investment and that it held the stock only long enough to acquire the whisky and then sold it to reduce the cost of the whisky as much as possible. In the circumstances, and as contended by taxpayer, the sale of the securities became an incident of the business. The loss was not a capital loss of taxpayer. Cf. *Hercules Motor Corporation*, 40 B. T. A. 999. Also see *Lawyers Title Co. of Missouri*, 14 T. C. 1221, which involved a title insurance company which had insured titles on a housing development and was also acting as escrowee of the borrowed funds and had guaranteed completion of the project. Taxpayer was forced to take over the work, finished it, and sold all the properties the same year. It suffered a loss. We said:

\* \* \* we are convinced that the properties came into petitioner's possession as a necessary incident to the conduct of its business and that they were held and completed primarily for sale to customers in the ordinary course of its business. *Joe B. Fortson*, 47 B. T. A. 158. *The fact that petitioner had not had occasion to follow this course of action before (so far as our record shows) does not prevent its being in the ordinary course of petitioner's business in the light of the surrounding circumstances.* [Emphasis added.]

Accordingly, we hold that the loss on the sale of the Distilling stock in this case was properly treated by the taxpayer as a part of the cost of the whisky acquired.

Since the stock was not acquired as an investment or for any purpose other than as a means of acquiring the whisky, and it was sold as promptly as possible in the ordinary course of business after this purpose was accomplished, it was property held primarily for sale to customers in the ordinary course of business and was not a capital asset. Hence, the shares were not "inadmissible assets" as defined in section 720 of the Internal Revenue Code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL, *J.*, dissents.

---

VAN FOSSAN, *J.*, dissenting: I am unable to follow the reasoning of the prevailing opinion which leads to the conclusion that the sale of the stock here involved did not result in capital loss but was a part of the cost of goods sold. Albeit the expectation of getting a supply of whiskey may have motivated the purchase of the stock, I nonetheless believe it was an investment and was a capital asset in petitioner's

hands. The query arises, where would the same reasoning lead us if circumstances were such that the stock was sold at a profit. Or, again, assume the stock was held for more than a year during which time the whiskey was all disposed of by petitioner and the tax returns had been filed accounting for the same, to what item of petitioner's accounting for such later year would the gain or loss be attached as part of the cost of goods sold.

Yet, further, how can the author of the prevailing opinion either directly or by necessary inference hold that the stock was sold to customers in the ordinary course of his business? Petitioner was in the whiskey business, not in the business of buying and selling securities. Its customers were customers for whiskey, not customers for securities.

Believing, as I do, that the reasoning employed in the prevailing opinion results in confused accounting and that such results will rise to plague the Court in future cases, I respectfully dissent.

TURNER, HARRON, and WITHEY, *JJ.*, agree with this dissent.