**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**The BAGLEY & SEWALL CO., Respondent.**

**No. 109, Docket 23096.**

United States Court of Appeals Second Circuit.

Argued Feb. 15, 1955.

Decided April 21, 1955.

Frank, Circuit Judge, dissented.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for petitioner.

Dunk, Conboy, McKay & Bachman, Watertown, N. Y. (Lawrence Conboy, Watertown, N. Y., of counsel), for respondent.

Before FRANK and MEDINA, Circuit Judges, and BRENNAN, District Judge.

BRENNAN, District Judge.

Whether or not the loss incurred in the posting of U. S. Government bonds as security for the performance of a contract is a capital loss or a business expense is the question posed on this appeal.

A background of essential facts were submitted by stipulation to the Tax Court. The Bagley & Sewall Co. (hereinafter referred to as the taxpayer), is a New York corporation engaged in the manufacture and sale of paper making machinery. In 1946 the taxpayer entered into a contract with a corporation acting in behalf of the Government of Finland for the manufacture and delivery of two paper making machines at a cost of approximately $1,800,000. Payments were to be made periodically during the progress of manufacture. The Government of Finland required that U. S. 2½% Government bonds be deposited with a New York financial institution as security for the performance of the contract and in accordance with an agreement which provided for the return of the bonds to Bagley & Sewall upon receipt of the last payment due under the contract. The above provisions were incorporated in and made a part of the contract. The taxpayer did not have or own the required bonds and in order to carry out the provisions of the contract, U. S. Government bonds in a total face value of $800,000 were purchased by the taxpayer with moneys borrowed for that purpose and same were deposited as required by the contract, the total cost of same being $820,062.50. The interest earned upon the bonds during the period that they were held in escrow was reported as income received by the taxpayer. In accordance with the terms of the contract, the bonds were released in two lots, one of $400,000 face value on Sept. 7, 1948 and one of $400,000 face value on Sept. 22, 1948. The bonds were sold by the taxpayer in each instance a few days after their release resulting in a loss of approximately $15,000 which the taxpayer claimed, in its tax return for 1948, as an ordinary and necessary business expense. During the period that the bonds were held in escrow and until they were sold, they were carried in the general ledger of the taxpayer in an account entitled "U. S. Gov't. Bonds" and on its balance sheet of Dec. 31, 1946 and Dec. 31, 1947, the bonds were shown under the caption "U. S. Gov't. Bonds".

Upon re-audit, the Commissioner of Internal Revenue determined a deficiency in the taxpayer's 1948 return on the ground that the above loss was a capital loss under Section 117(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. The matter came on before the Tax Court and after making minor adjustments, which are not here in dispute, the Tax Court found in effect in accordance with the claim of the taxpayer that the sale of the bonds was of assets held for sale in the ordinary course of petitioner's business and the loss was deductible as an ordinary and reasonable business expense.

The findings made are substantially as outlined above with the following additions * * * that the taxpayer was not in the business of buying and selling securities, that its available cash reserve was necessary for working capital, that

it is clear that no investment in U. S. bonds was intended by the petitioner, they were acquired solely to carry out a condition imposed by the contract. It was concluded that the purchase and sale of these bonds was merely an incident in the carrying on by the petitioner of its regular business of manufacturing and selling paper making machines. The Tax Court relied upon the decisions in Western Wine & Liquor Co., 18 T.C. 1090 and Charles A. Clark, 19 T.C. 48 and distinguished the case of Exposition Souvenir Corp. v. Commissioner, 2 Cir., 163 F.2d 283. This appeal followed.

Concisely stated, the contention by the Commissioner is that the bonds constituted capital assets, as the term is defined in Section 117(a) (1) of the Internal Revenue Code and that the loss sustained upon their sale is to be treated as a capital loss to the extent of offsetting capital gains, none of which are reported by the taxpayer and therefore the whole item is subject to elimination.

The taxpayer's contention is to the effect that the whole transaction is merely an incident required and made necessary in the performance of a contract undertaken in the regular course of the taxpayer's business and is deductible from gross income in its entirety by reason of the provision of Section 23(a) (1) (A) of the Internal Revenue Code of 1939.

The difficulty with the Commissioner's contention is that in effect he urges that the bond transaction should be considered independently of the contract of which it is a definite part. This circuit in Helvering v. New Haven & S. L. R. Co., 121 F.2d 985, at page 988 has held that a contract may not be thus atomized.

In Exposition Souvenir Corp. v. Commissioner, 2 Cir., 163 F.2d 283, the taxpayer was required to make an investment, related to, but not a part of the concession contract. This is not the situation here. The contract represents a complete business transaction, security of performance alone, not investment was required. The cost of procuring that security cannot be distinguished from ordinary premium expense of a surety company bond which is a usual item of contractor's costs. The Exposition case may be further distinguished by the fact that the debentures were treated as investments in the taxpayer's books and tax returns and in that case the Tax Court made a finding that the debentures were not held for sale in the ordinary course of business. There is no such treatment of this transaction in this taxpayer's tax return and no such finding. It is implicit that the Tax Court found that the bonds here were held for sale to purchasers as soon as released from escrow and available for sale. In the Exposition case, an investment was intended and the taxpayer relied upon the motive for the investment for relief. Here there is a clear finding that no investment was intended. The Taxpayer's lack of surplus capital, the interest return of the bonds, the interest obligation of the loan and the almost immediate sale of the bonds when available make such a finding imperative. The finding here in this respect is similar to that made in Gilbert v. Commissioner, 1 Cir., 56 F.2d 361.

In brief, it is urged that the all inclusive language of Section 117 requires that, since the bonds are "property", they must be treated as capital assets unless exempted by the specific language of the Section. The argument carries with it the necessary conclusion that the circumstances of the transaction, its factual background, the necessities of the business involved and the intentions of taxpayer are of no importance except in determining whether the bonds are exempted under the Section. We are not persuaded that Section 23 is so completely subordinate to Section 117 and we find no authority which goes so far.

"Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances". Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, at page 475, 64 S.Ct. 249, at page 254, 88 L.Ed. 171. The purchase of stock in order to terminate an agency contract was held to be busi-

ness expense. Helvering v. Community Bond & Mortgage Corporation, 2 Cir., 74 F.2d 727. The purchase of stock in a non-profit corporation to aid business was held to be a business expense. Commissioner of Internal Revenue v. The Hub, 4 Cir., 68 F.2d 349. The purchase of stock of a liquor corporation in order to purchase liquor therefrom was held to be business expense. Hogg v. Allen, D.C., 105 F.Supp. 12, affirmed, Edwards v. Hogg, 5 Cir., 214 F.2d 640, 644. We find similar holdings by the Tax Court especially the two cases relied upon by that Court and referred to above. The above authorities are cited here not to show that we necessarily agree with the conclusions therein but as an indication that business expense, Section 23, has been many times determined by business necessity without a specific consideration of Section 117.

■ An appreciation of the particular situation, Welch v. Helvering, 290 U.S. 111, at page 116, 54 S.Ct. 8, 78 L.Ed. 212, to which is applied the pertinent sections of the law according to common understanding and experience, Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L. Ed. 75, is the measure of the law's requirement.

■ We find no comparable authority wherein a contract is dissected and its separate parts are subjected to application of particular sections of the Revenue Law. The Tax Court was right in refusing to wrench this transaction from its setting and its finding and conclusion is amply supported by evidence. To decide otherwise is to apply the law so as to escape reality.

The decision is affirmed.

FRANK, Circuit Judge (dissenting).

Congress, in Section 23, prescribed the items which may be deducted in computing net income. In Section 23(g) (1), it provided that "losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117." Then, in Section 117, sub-paragraph (a) (1), Congress explicitly defined "capital assets" to mean "proper-

ty held by the taxpayer (whether or not connected with his trade or business)". Had Congress stopped there, perhaps it would be proper to do, as my colleagues do, i. e., to find in Section 23(a) (1) (A) and (f) exceptions to the definition contained in Section 117(a) (1). But Congress, in Section 117(a) (1), went on very explicitly to enumerate the exceptions to the definition, by saying that the term "capital assets" does "not include"

"stock in trade of the taxpayer";

"other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year";

"property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business";

"property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in Section 23(*l*)";

"an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue";

"real property used in the trade or business of the taxpayer."

The property in the instant case does not fit into any of those exceptions. I think that a court, facing such explicit statutory exceptions, has no power to invent another by recourse to other general statutory provisions—Section 23(a) (1) (a) and (f)—which do not refer to Section 117 and to which Section 117 does not refer. See, e. g., United States v. Colorado & N. W. R. Co., 8 Cir., 157 F. 321, 332, 15 L.R.A., N.S., 167; Rybolt v. Jarrett, 4 Cir., 112 F.2d 642, 645; Brooks v. St. Louis-San Francisco Ry. Co., 8 Cir., 180 F.2d 185, 187, 15 A.L.R. 2d 1154; Cunard S. S. Co. v. Mellon, 262 U.S. 100, 128, 43 S.Ct. 504, 67 L.Ed. 894; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 189, 54 S.Ct.

644, 78 L.Ed. 1200; Fairbanks, Morse & Co. v. Harvey, 114 Vt. 425, 47 A.2d 123, 126; Connecticut Light & Power Co. v. Walsh, 134 Conn. 128, 57 A.2d 128, 131, 1 A.L.R.2d 453.[1]

The last clause of Section 117(a) (1) is illuminating: From "capital assets" it excepts "real property"—no other— if "used in the trade or business of the taxpayer". My colleagues, in effect, treat that clause as if it read "any property used in the trade or business of the taxpayer." This, I think, an improper judicial amendment of the statute.

The Tax Court found that the property here was "held for sale in the ordinary course" of taxpayer's business. Assuming, arguendo, that this finding was justified by the evidence, still it cannot help taxpayer For the only exception in Section 117(a) (1) which approximates that finding is "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". The Tax Court's finding significantly omits "primarily"; and, if it had made a finding containing that word, the finding, on this record, would have been "clearly erroneous."

In this Circuit, there are but two decisions which bear on this case: In Exposition Souvenir Corp. v. Commissioner, 2 Cir., 163 F.2d 283, the taxpayer, a concessionaire, purchased debenture bonds, of New York World's Fair 1939, Inc., as required by a contract in which the Fair awarded concession rights to the taxpayer corporation, held the debentures until six months after the close of the Fair, and then sold them at a net loss. The taxpayer urged, in the alternative, that the debentures were held for sale in the ordinary course of business or that the loss constituted an ordinary and necessary business expense deductible under I.R.C. § 23(a) (1) (A). The Tax Court ruled against both contentions and this court affirmed. The loss in that case, as in the case at bar,

was a business expense, in that the concessionaire would probably not have purchased World's Fair debentures except to secure the concession. So here, taxpayer, in all probability, would not have purchased government bonds but for the expectation of contracting with the Finnish government. The bonds in both cases were capital assets, and did not lose that status because their purchasers were not primarily motivated by hopes of interest payments or a rise in their market value. In the earlier case of Helvering v. Community Bond & Mortgage Corporation, 2 Cir., 74 F.2d 727, per Manton, J., the taxpayer, in order to extinguish a troublesome agency contract, bought up the capital stock of the company with which it had contracted, re-issued the stock to dummy stockholders, and promptly voted cancellation of the agency contract and the dissolution of the company. This court allowed the cost of the capital stock to be deducted as an ordinary and necessary expense of doing business. The question was not raised whether the loss was a capital loss. Without discussion of that question, the court treated the case just as if the taxpayer had directly paid money for cancellation of an exclusive-agency contract. Such a decision cannot serve as a precedent here. See Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L. Ed. 411: "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." See also, Helvering v. Cement Investors, 316 U.S. 527, 530 note 1, 62 S.Ct. 1125, 86 L.Ed. 1649; Bard-Parker Co., Inc., v. Commissioner, 2 Cir., 218 F.2d 52, 57.

Helvering v. New Haven & S. L. R. Co., 2 Cir., 121 F.2d 985, related not at all to the question whether assets were or were not "capital assets" under Section 117, but solely to the application of the reorganization provisions of the statute.

---

1. Of course, this rule of interpretation may yield where (1) if applied the statute would approach the absurd or (2) the legislative history clearly shows a different legislative purpose.

There the Commissioner attempted to isolate particular steps in a reorganization plan. We held—on familiar principles in connection with reorganizations for tax purposes—that he could not "atomize a plan."

I turn to cited cases decided in other circuits: In Commissioner of Internal Revenue v. The Hub, 4 Cir., 68 F.2d 349, 350, the taxpayer, a Wheeling, West Virginia, clothier, joined with other Wheeling retailers in organizing the Ohio Valley Industrial Corporation. The purpose of the corporation was to arrest the economic decline then experienced in Wheeling, by planning for and assisting in the settlement of new industry in the Wheeling area. Taxpayer's subscriptions to the capital of the corporation were permitted to be deducted as a business expense. In that case, however, the stock of the corporation, as distinguished from the government bonds in the instant case or from the Fair bonds in *Exposition Souvenir*, could not be regarded as an investment. The Ohio Valley Industrial Corporation was a nonprofit corporation, exempt from state and local taxes. The certificate of incorporation, after declaring that " 'This Corporation is not organized for personal gain, but only as a civic-undertaking,' " specifically provided that " 'there shall never be any dividends declared from profits, and all profits accruing shall be placed in a surplus fund for the objects and purposes of the Corporation.' " In those unusual circumstances, the court did not consider the stock purchase a purchase of capital assets.

In Edwards v. Hogg, 5 Cir., 214 F.2d 640,[2] the taxpayer, engaged in the business of selling liquor, purchased all the shares of stock of a distilling company for the sole purpose of obtaining the liquor owned by the distilling company, and which the taxpayer intended to sell to its own customers in the ordinary course of its business. Looking through the distilling company to its assets, it was apparent that the purchase of that company's stock was but a means of acquiring the liquor which was then in short supply, i. e., obtaining the liquor was taxpayer's essential purpose. The liquor itself was property of a kind which came within one of the exceptions explicitly stated in Section 117(a) (1).[3] Gilbert v. Commissioner, 1 Cir., 56 F.2d 361, presents a case where a building contractor received, as compensation, shares of stock in the company for which the building was erected. As found by the trial court, he accepted them in lieu of cash and intended to convert them into cash as soon as possible (a practice not uncommon among engineering and contracting firms of that day). The court found that, in those circumstances, the stock was property held by the taxpayer primarily for sale in the course of his trade or business. I think a better rationale of that decision would be that, whenever a taxpayer receives property as compensation, the situation is to be regarded as if he had received cash and had then invested it in that property; the cash value of the property is therefore part of his ordinary gross income and taxable as such. Section 117 has no application to a case of that sort. If, however, such a taxpayer retains the property, then it is a "capital asset"— i. e., an investment in that property— and Section 117 applies to its subsequent disposition.

There is no need to consider here the problem which would arise if a taxpayer, as part of a contract, obligated himself to buy some securities, from the other party to the contract, at a price above the market price. For that was not the case here. Indeed, the contract here did not require taxpayer to buy any government bonds but merely to put such bonds in escrow, a requirement which could have been met without a purchase of bonds, if the taxpayer had

**2.** The court, on the issue relevant here, adopted the conclusions of the district court, reported in Hogg v. Allen, 105 F. Supp. 12, 21.

**3.** See Western Wine & Liquor Co., 18 T. C. 1090, 1099; Charles A. Clark, 19 T.C. 48, 51.

already owned a sufficient amount of them.

My conclusion here derives from no ardent desire to add to the government's revenues by invariably interpreting statutes adverse to taxpayers; see, e. g., my dissenting opinion in Babcock & Wilcox Co. v. Pedrick, 2 Cir., 212 F.2d 645. But I think that courts should not allow what they deem fairness to taxpayers to over-ride one of the most sensible canons of statutory construction, i. e., that, where a statute sets forth specific exceptions, further exceptions, by way of mere implication, are not permissible.[4] Moreover, to hold for the taxpayer here may well mean unfairness to other taxpayers who, having acquired securities in situations just like this, but having made a gain on the sale of the securities seek to claim that their taxable profits are capital gains, not ordinary income.