ELECTRICAL FITTINGS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65080. Filed March 18, 1960.

*Sigmund Metz, Esq.*, for the petitioner.
*Anthony S. Del Giudice, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* The first issue involves a loss sustained by petitioner on the sale of stock in Ductile, a corporation which produced castings for use in petitioner's manufacturing business. The respondent has determined that the loss was a capital loss, and disallowed the deduction of the amount from ordinary income.

A supply of iron castings is essential to the petitioner's business of manufacturing electrical fittings. Several months before the start of the Korean conflict, it became exceedingly difficult for it to obtain malleable iron castings, the most suitable type for electrical fittings. As a substitute, it purchased castings made from ductile iron, although they were much less suitable. Within a year the petitioner's principal supplier of ductile iron castings needed its foundry for its own products. To insure its supply of castings, the petitioner joined with two other corporations and an individual in organizing Ductile, to operate a foundry to produce ductile iron castings. All of the castings made by Ductile were used by the

petitioner and the other two corporations in their manufacturing businesses.

The tax treatment of the loss on the sale of the Ductile stock depends on the purpose for which the petitioner acquired the stock. Stock purchased as an investment is a capital asset; when sold, it creates capital gain or loss. But stock purchased in the ordinary course of business where the only purpose is to insure a vital source of inventory is not a capital asset, and the loss upon its sale is deductible from ordinary income. *Commissioner* v. *Bagley & Sewall Co.*, 221 F. 2d 944, affirming 20 T.C. 983; *Tulane Hardwood Lumber Co.*, 24 T.C. 1146; *Smith & Welton* v. *United States*, 164 F. Supp. 605. These cases raise a question as to whether the loss should be deducted as cost of goods sold, as an ordinary and necessary business expense, or as a business loss. In most instances, however, the particular section under which the loss is deducted will not affect the result in the case.

On the record before us, we conclude that the petitioner has sustained its burden of proving that it had no investment purpose in buying the Ductile stock. Factors pointing to the lack of an investment purpose are these: No other securities were owned by the petitioner. Since the Ductile stockholders used all of the castings produced by the foundry in their manufacturing businesses, there could be no profit from the sale of castings to other consumers. Without the stock purchase the petitioner would have been unable to obtain castings. The stock was held by the petitioner only as long as reasonably necessary under the practical considerations involved.

To show an investment purpose, the respondent calls attention to the recording of the stock in the petitioner's accounting records as an "investment." Although the manner in which the asset is carried upon the books and tax returns could be an indication of the purpose for which the asset was acquired, the accounting entry is by no means conclusive. *Tulane Hardwood Lumber Co.*, *supra;* *Smith & Welton* v. *United States*, *supra.* The other evidence outweighs the accounting entry in this case.

In an attempt to distinguish the *Bagley & Sewall*, *Tulane Hardwood*, and *Smith & Welton* cases, the respondent argues that in those cases the stock or debenture purchases were not sufficient to give the taxpayers control of the supplier corporation. Even if this distinction is meaningful, which it is not necessary to decide here, the petitioner in this case was neither a sole stockholder nor a majority stockholder. True, the petitioner did have a voice in the management of Ductile, but it was the owner of only one-fourth of the common stock. The respondent thus has failed in our opinion to distinguish the cited cases.

We accordingly hold that the petitioner is entitled to deduct in its fiscal year ended May 31, 1954, its loss on the sale of the Ductile common and preferred stock. Though it is not necessary to state under which section the loss should be allowed, the circumstances here indicate that section 23(f) of the Internal Revenue Code of 1939 [1] should apply.

The respondent contends that the cancellation of the petitioner's account payable to Ductile of $11,380.25 creates ordinary income to the petitioner of that amount. But since we have held above that the loss on the Ductile stock was a business loss and the petitioner on its return has reduced the amount of such loss by $11,380.25, the effect is the same as if there had been $11,380.25 of additional income without a corresponding reduction in the amount of the loss claimed.

Similarly, we do not find it necessary to consider whether the $5,000 advance made by the petitioner to Ductile and never recovered was a capital contribution, as urged by the respondent, or a debt, as the petitioner claims. In the light of our holding that the loss on the stock was a business loss, not a capital loss, it is of no consequence whether the $5,000 be regarded as a contribution to capital or a loan.

*Decision will be entered under Rule 50.*

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.