286 F.Supp. 956 (1968)
M. F. A. CENTRAL COOPERATIVE, a Missouri Corporation
v.
Edwin O. BOOKWALTER, District Director of Internal Revenue at St. Louis, Missouri.
No. 66 C 124(2).
United States District Court E. D. Missouri, E. D.
June 14, 1968.
*957 Harold S. Cook and D. Jeff Lance, Cook, Murphy, Lance & Mayer, St. Louis, Mo., for plaintiff.
Veryl L. Riddle, U. S. Atty., Jim J. Shoemake, Asst. U. S. Atty., St. Louis, Mo., Elliott H. Kajan, Atty., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM
MEREDITH, District Judge.
This action was brought by M.F.A. Central Cooperative against Edwin O. Bookwalter, District Director of the Internal Revenue, seeking a refund in federal income taxes paid in prior years. This Court has jurisdiction under 28 U. S.C. 1346(a) (1). The matter was tried to the Court without a jury.
Plaintiff is a farmers' cooperative organized under the laws of Missouri. Its books are kept on a September 1st to August 31st fiscal year basis. In the fiscal years 1958 and 1959, and since that time, the plaintiff borrowed money from the St. Louis Bank for Cooperatives.
The St. Louis Bank for Cooperatives is one of twelve regional banks for cooperatives originally established as part of the New Deal. The banks for cooperatives are organized and governed by the provisions of Subchapter V of Chapter 7, Title 12, U.S.C. The twelve regional banks for cooperatives and the Central Bank for Cooperatives were organized to extend credit to farmers' marketing, purchasing, and service cooperatives. See Legislative History, Farm Credit Act of 1955, U.S. Code & Adm. News 1955, Vol. 2, pp. 2949-51.
A regional bank for cooperatives has three classes of stock:
Class A stock represents capital contribution by the United States; it is non-voting, does not pay dividends, and is to be retired at par according to a method which depends upon the Class C stock purchased and the net profit of the regional bank.
Class B stock may be sold to any person, is non-voting, but may pay a dividend not to exceed four percent per annum.
Class C stock may be issued only to banks for cooperatives and farmers' cooperative associations. Class C stock may be acquired by a farmers' cooperative in three ways. First, a farmers' cooperative to be eligible to borrow from a bank for cooperatives must purchase one share of Class C stock at its par value of $100. Second, each borrower is required to invest quarterly a specified amount in Class C stock. The amount to be invested each quarter is determined by the board of directors of the regional bank for cooperatives, and is based on a percentage (not less than ten nor more than twenty-five percent) of the interest payable by the individual borrower for that quarter. The third way in which a farmers' cooperative may receive Class C stock is as a result of payment of net profits earned by the regional bank for cooperatives during its fiscal year. These net profits are paid as patronage refunds in the form of Class C stock in proportion to the amount of interest earned on the loans of each borrower as compared to the total interest earned on the loans to all borrowers during that fiscal year. Class C stock may be issued in fractional shares. No dividends are payable on Class C stock. The holders of Class C stock are entitled to vote, but only on the basis of one vote for each stockholder, regardless of the number of shares held. To be eligible to exercise this right to vote, the farmers' cooperative must have been a borrower from *958 the regional bank for cooperatives within the two years preceding the date of voting. See 12 U.S.C. § 1134d(a) and 12 U.S.C. § 1134l.
The controversy in the case presently before the Court is the nature of the payments made by M.F.A. Central Cooperative to the St. Louis Bank for Cooperatives for Class C stock required to be purchased quarterly as set forth above.
M.F.A. Central Cooperative, at the close of its fiscal year on August 31, 1958, was indebted to the St. Louis Bank for Cooperatives in an amount of approximately $3,300,000. During that fiscal year it paid interest to the St. Louis Bank for Cooperatives, which it deducted as an expense on the federal income tax return filed for the fiscal year. It did not deduct as an expense $20,154.32 paid quarterly during that fiscal year for Class C stock in the St. Louis Bank for Cooperatives. This amount was carried on the books of M. F.A. Central Cooperative in an asset account entitled "Class C Stock, St. Louis Bank for Cooperatives". An amended federal income tax return was filed later and the $20,154.32 was deducted as an expense.
At the end of its fiscal year on August 31, 1959, M.F.A. Central Cooperative was indebted to the St. Louis Bank for Cooperatives in an amount of approximately $3,800,000.
The interest paid on this indebtedness during the fiscal year was deducted on the federal income tax return filed for that period. The total quarterly payments of $27,966.97 for Class C stock in the St. Louis Bank for Cooperatives were also deducted as an expense. The $27,966.97 was reflected on the books of M.F.A. Central by crediting to "Class C Stock, St. Louis Bank for Cooperatives" the sum of $23,211.07 (the fiscal year of M.F.A. Central and the quarterly statement periods of the St. Louis Bank did not coincide, so $4,755.90 was entered in "Accrued Interest" account of the plaintiff).
The District Director of the Internal Revenue denied the deductions attributable to purchase of Class C stock and assessed additional tax (including interest) of $751.74 and $6,151.78 for the fiscal years 1958 and 1959, respectively. The assessments were paid, and claims for refund filed and denied. This action was commenced to secure refund of these payments.
The plaintiff contends that to the extent that the payments for Class C stock exceed the fair market value of the stock issued therefor, then such payments are deductible from ordinary income as interest under section 163 of the Internal Revenue Code or as ordinary and necessary business expense under section 162(a) of the Internal Revenue Code. M.F.A. Central states that it is academic under which section the payments fall. The defendant contends that the quarterly payments for Class C stock are capital expenditures and not deductible under either of the above sections. The plaintiff argues that the issue is not whether the expenditures are of a capital nature, but that the issue is the fair market value of the Class C stock. It contends that to the extent of the fair market value of the Class C stock, the expenditure would be of a capital nature, but to the extent that the Class C stock does not have a fair market value, then the payments are deductible. The determination of deductions under the Internal Revenue Code cannot be approached in this manner. Section 63(a) of the Internal Revenue Code provides: "the term `taxable income' means gross income, minus the deductions allowed by this chapter, * * *" Congress thus provides explicitly for the deductions which may be taken by a taxpayer. It is necessary to examine the particular provisions of the Internal Revenue Code to determine whether a given expenditure is deductible.

Whether Deductible as Interest
Interest may be deducted from gross income under section 163(a) of the Internal Revenue Code. This section provides: "[t]here shall be allowed as a *959 deduction all interest paid or accrued within the taxable year on indebtedness." Interest has been defined as that amount which one has contracted to pay for the use of borrowed money. Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1932); Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940). A loan agreement, dated July 11, 1958, between the plaintiff and the St. Louis Bank for Cooperatives was introduced into evidence by the plaintiff. It was said to be typical of those used during the relevant period of time. The agreement provided for the payment of interest and the purchase of Class C stock in the following separate paragraphs:

 "INTEREST: Each advance made hereunder shall bear interest
 at the rate prescribed by the bank in accordance
 with law, payable quarterly on the last day of
 March, June, September, and December; provided,
 however, that if the interest rate charged by
 the bank on loans similarly classified is changed
 to a higher or lower rate than the rate effective
 on the date hereof, the association agrees to pay
 such higher rate, and the bank agrees to accept
 such lower rate on the unpaid balance hereunder,
 from the effective date of such change of interest
 rate.
 "INVESTMENT IN Advances hereunder shall be subject in all respects
 CLASS C STOCK: to the provisions of the Farm Credit Act of
 1955 and regulations issued pursuant thereto.
 The association shall invest quarterly in Class
 C stock of the bank an amount equal to 15% of
 the amount of interest payable by the association
 to the bank during the calendar quarter. * * *"

The agreement from which the above paragraphs are extracted was signed by a vice president of the St. Louis Bank for Cooperatives and by a vice president of M.F.A. Central Cooperative. Testimony at the trial stated that a separate note and mortgage were executed.
The provisions of the above agreement seem to indicate that the payments for Class C stock were not considered by the parties to be payments for the use of money. The interest and the payments for Class C stock were set forth in separate paragraphs. If this amount spent on Class C stock is to be considered interest, it would seem that it would be in the nature of a bonus paid for the loan. Several cases have held that a bonus paid to induce a loan was interest within the meaning of the Internal Revenue Code. Wiggin Terminals, Inc., 36 F.2d 893 (1st Cir. 1929) (payment of $50,000 cash bonus); L-R Heat Treating Co., 28 T.C. 894 (1957) ($61,200 withheld from amount paid to borrower, "as premium for making loan"); Court Holding Co., 2 T.C. 531 (1943), rev'd on other grounds, 143 F.2d 823 (5th Cir. 1944), aff'd on other grounds, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 567 (1945) (payment of $350 cash bonus). These cases are distinguishable from the present matter, because in each of the cited cases the debtor parted with the additional money and received nothing in return other than the use of the lender's money. In the present situation, M.F.A. Central Cooperative parted with the additional money and received stock in the St. Louis Bank, which had a corresponding face value.
*960 The amount of money spent each quarter to purchase the Class C stock is not interest. The plaintiff by this expenditure purchased something other than the use of money.

Whether Deductible as Ordinary and Necessary Business Expenses
Ordinary and necessary business expenses may be deducted from income under section 162(a) of the Internal Revenue Code. This section provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business * * *" The United States Supreme Court in commenting on this section in Commissioner v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966), said:
"The principal function of the term `ordinary' in § 162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset."
Whether or not the expenditures of the taxpayer for the Class C stock in this case are deductible under section 162(a) turns upon whether they are in the nature of a capital expenditure or a day-to-day business expense.
The cases of Ancel Greene & Co., 38 T.C. 125 (1962), and McMillan Mortgage Co., 36 T.C. 924 (1961), are cited by both parties in support of their positions. The taxpayers in these cases purchased stock in the Federal National Mortgage Association. The Federal National Mortgage Association was established by Congress to provide a "secondary market facility for home mortgages." 12 U.S.C. § 1716. The taxpayers in both of these cases were engaged in the business of buying (or developing), servicing, and selling mortgages on residential property. Some of the mortgages which the taxpayers held they sold to the Federal National Mortgage Association. Congress provided in the enacting legislation that a certain percentage of the price which the Federal National Mortgage Association would pay for a mortgage would be paid in the capital stock of the Association.
The taxpayer in McMillan Mortgage Co., supra, sold mortgages to the Federal National Mortgage Association and received part of the purchase price in the form of capital stock in the Association. It normally sold the stock on the market at a loss. The taxpayer contended that the Federal National Mortgage Association stock which it acquired was not a capital asset under the particular facts of its business, but the expenditure therefor was a deductible business expense under section 162 of the Internal Revenue Code, and that the subsequent disposition of the stock resulted in ordinary gain or loss. The Tax Court agreed. M.F.A. Central Cooperative cites this holding supporting its position in this suit. There is a similarity in that the taxpayer in each situation is required to invest in the capital stock of a corporation created by Congress as a prerequisite to availing itself of the services offered by the corporation. The case does not turn upon the involuntary nature of the purchase, however. In the McMillan case the Tax Court specifically found that the stock was not acquired for investment purposes. The court looked to the particular facts of the taxpayer's business:
"Petitioner's business activity of acquiring and selling FNMA stock was a necessary adjunct to its mortgage business not unlike the situation of a franchise automobile dealer who is in the used car business in acquiring and selling trade-ins. Petitioner acquired and sold the stock as a normal day-to-day business activity of its mortgage business and the stock was not a capital asset in its hands."
There is a more basic distinction between the taxpayers in the McMillan and Ancel Greene cases and M.F.A. Central Cooperative in this action. This distinction is drawn out by examining the Tax Court's holding in Ancel Greene & Co., *961 supra. In this case the taxpayer did not dispose of the Federal National Mortgage Association stock as it received it, but held it for considerable time. The Tax Court found that the stock was held for investment purposes and was a capital asset when sold by the taxpayer. The Court considered the issue of whether the taxpayer must take the face or par value of the stock into income in the year in which it was acquired or only the fair market value. The Court held that the taxpayer was required to report only the fair market value of the securities received. M.F.A. Central Cooperative points out that this has the same economic effect on taxable income as allowing a deduction for the amount of the purchase price above the fair market value. This is the essence of M. F.A. Central Cooperatives' contention in the present action. It contends that it should be allowed a deduction from income for the difference between the amount expended to purchase the Class C stock and the fair market value of the stock which it receives.
Whether or not an expenditure is deductible as an ordinary and necessary business expense depends upon the nature of the expenditure as compared with the nature of the taxpayer's business. It is normally a question of fact. Justice Cardozo remarked in a case involving the issue of what was an "ordinary" expense:
"Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind. One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." Welch v. Helvering, 290 U.S. 111, 114-115, 54 S.Ct. 8, 9, 78 L. Ed. 212 (1933).
When we examine the nature of the taxpayer's business and the expenditure for Class C stock, it becomes apparent that the only reason the stock was purchased was because it was a condition imposed by the bank in making the loan. M.F.A. Central Cooperative would not have purchased the stock otherwise. There was no dividend payable on the stock. Although the stock would be redeemed at par, such redemption was at the option of the bank. The money expended for the stock would be tied up for many years without benefiting the taxpayer in any manner. The Class C stock issued in 1956 was not redeemed until 1967.
This Class C stock could not be disposed of except to another eligible cooperative, and then only with the permission of the bank. In practice the only time a cooperative would acquire Class C stock from another cooperative was as the result of a merger. The rights which a shareholder had as an incident of owning Class C stock did not increase with the purchase of additional shares. The Class C shareholder who owned one share had the same vote as a shareholder who owned one thousand shares. The right to the one vote was an incident of ownership of the first qualifying share purchased.
This Class C stock purchased quarterly was of absolutely no use or benefit to M.F.A. Central Cooperative. It paid no dividend and possessed no rights. The only reason it was purchased was because M.F.A. Central wanted to borrow money from the St. Louis Bank for Cooperatives and the agreement to purchase the Class C stock was imposed as a condition of the loan. It is impossible to separate the loan from the purchase of the stock. One was the motivation for the other.
This situation is similar to the transaction entered into by the taxpayer in Smith & Welton v. United States, 164 F.Supp. 605 (E.D.Va.1958). The taxpayer in that case was a retail clothing store which had been selling garments manufactured by Handmacher-Vogel, Inc. Handmacher, seeking capital to expand its operations, informed the taxpayer that the taxpayer would not be allowed to handle its clothing in the future *962 unless five hundred shares of Handmacher stock at $10 per share were purchased. The taxpayer purchased the stock and later sold it at a loss. The Court found that the stock was not held for investment purposes, but was a business expense, and held that the loss was an ordinary loss and not a capital loss. The Court noted that the stock purchase could not be divorced from the circumstances which surround the acquisition.
Other cases of this nature are discussed in 3B Mertens, § 22.16, under the topic of "Tie-In Purchases". The Government cites a case involving a tie-in purchase as authority for its argument that the Class C stock is a capital investment. In Exposition Souvenir Corp. v. Commissioner of Internal Revenue, 163 F.2d 283 (2d Cir. 1947), as condition precedent to obtaining a concession at the New York World's Fair, the taxpayer was required to purchase debentures issued by the Fair. The debentures were later sold at a loss and the taxpayer sought to deduct the loss as an ordinary loss. The Court held, however, that the debentures were capital assets and the loss was not an ordinary and necessary business expense. This holding has been modified by subsequent holdings of the same Circuit. See Commissioner v. Bagley & Sewall Co., 221 F.2d 944 (2d Cir. 1955). Subsequent cases from other circuits and the Tax Court indicate that the view taken by the Second Circuit in Exposition Souvenir Corp. v. Commissioner of Internal Revenue, supra, is not the accepted view at the present. See Booth Newspapers, Inc. v. United States, 303 F.2d 916 (Ct. Claims 1962); Electrical Fittings Corp., 33 T.C. 1026 (1960); Western Wine & Liquor Co., 18 T.C. 1090 (1952), petition for review dismissed 205 F.2d 420 (8th Cir. 1953).
The Government also raises the issue of the treatment of patronage dividends received in the form of Class C stock in the St. Louis Bank for Cooperatives during the tax years in issue. The taxpayer, M.F.A. Central Cooperative, did not take the par value of the Class C stock received as patronage dividends into income. It entered the entire patronage dividend on its books at the value of $1.00. The Government contends that M. F.A. Central Cooperative should have taken the entire par value of the Class C stock received as patronage dividends into income.
Based upon the nature of the Class C stock as discussed previously, this Court is of the opinion that the Class C stock issued by the St. Louis Bank for Cooperatives did not have a fair market value at the time it was issued, and plaintiff properly did not include it in income.
Accordingly, judgment will be entered for the plaintiff in this cause. This memorandum will be adopted in companion causes Nos. 67 C 352, 67 C 353, and 67 C 354, which involve the same issue, and judgment will be entered for the plaintiffs in those cases.
Plaintiffs shall submit judgments to the Court within 10 days after consultation with defendant.