CARL AND RUTH BRIGGS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RAYMOND J. HURBI, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1473–78, 5978–78.     Filed December 30, 1980.

*Ronald E. Cummings, F. A. LeSourd, Meade Emory, Leon C. Misterek,* and *Rodney J. Waldbaum,* for the petitioners.
*Charles L. Eppright,* for the respondent.

OPINION

SIMPSON, Judge: The Commissioner determined a deficiency of $306.87 in the Federal income tax of Carl and Ruth Briggs for 1975 and a deficiency of $298.05 in the Federal income tax of Raymond J. Hurbi for 1976. The only issue to be decided is

whether the petitioners were entitled to deduct under section 162(a) of the Internal Revenue Code of 1954[1] the entire amounts of the dues paid to a labor union when some of such dues were allocated by the union to a building fund for which the members received redeemable certificates and to a fund for the construction of recreational facilities for the members.

All of the facts have been stipulated, and those facts are so found.

The petitioners, Carl and Ruth Briggs, husband and wife, maintained their legal residence in Alaska when they filed their petition in this case. The petitioner, Raymond J. Hurbi, maintained his legal residence in Alaska when he filed his petition. Mr. and Mrs. Briggs filed their joint Federal income tax return for 1975, and Mr. Hurbi filed his individual Federal income tax return for 1976, with the Internal Revenue Service Center, Ogden, Utah.

During 1975, Mr. Briggs was employed by Sealand Freight Services (Sealand) in Anchorage, Alaska. As a condition of his employment, he was required to be a member of Local 959 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (Local 959 or the union). During 1976, Mr. Hurbi was employed by ITT Arctic Services (ITT) into July, and by RCA Alaska Communications through the end of the year, and was stationed 70 miles from Fairbanks, Alaska. He, too, was required to be a member of Local 959 while working for ITT.

To maintain good standing with Local 959, members were required to pay fixed monthly dues as well as additional dues for each hour of work. The monthly dues were paid personally by the members, while the hourly dues were deducted from the members' paychecks by their employers and transmitted directly to the union. On December 17, 1963, Local 959 adopted a plan whereby 3 cents of the hourly dues of each member was specially allocated to a union building fund. It was agreed that for each $50 collected from a member for the building fund, the member would receive a "BUILDING FUND OWNERS CERTIFICATE" which certified "that Fifty Dollars ($50.00) of the Union dues paid by the holder hereof has been deposited to * * * Local

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

959 Building Fund." By their terms, the certificates were redeemable with interest (no rate was specified) at the completion of the building program. They were also redeemable without interest when the holder died or, if he was eligible for an honorable withdrawal card from the union, when he retired or left the jurisdiction of Local 959. The certificates stated that they were not transferable and that they did not constitute an interest in the assets of Local 959.

With its building fund, Local 959 constructed or purchased buildings in Anchorage, Kenai, Juneau, and Valdez, Alaska, which were used principally for union offices. At the time of trial, the union was seeking to organize other industries in Alaska, and if successful, it will need more office space. Also, an old building in Juneau will probably have to be replaced in the near future. The union has not yet declared its building program completed.

In July 1974, Local 959 began seeking an increase of 15 cents in the hourly dues deducted by employers when it renegotiated collective bargaining contracts. The union planned to spend the increase to construct recreation centers in Anchorage and Fairbanks for its members. In 1974, planning for the centers was begun, and in that year, the employees of Sealand approved a new collective bargaining contract in which the increase in hourly dues was included. In 1975, the employees of ITT approved a new collective bargaining contract in which the increase was included. The union collected $2,939,474.60 in 1975 and $3,288,446 in 1976 from the increase in dues.

The recreation centers in Anchorage and Fairbanks were built during 1976 and 1977. On May 22, 1977, the centers opened. Each had tennis courts, handball courts, locker rooms, exercise rooms, saunas, steam rooms, a jogging track, swimming pool, child care center, pro shop, gymnasium, and other facilities. At the time of trial, the total cost of the recreation centers was $15,153,217, of which $5,203,218 had been paid by the union, and the balance had been borrowed.

A union member received and maintained eligibility to use the recreation centers by accumulating "recreation hours," that is, hours of work for which the 15-cent recreation dues were subtracted from pay. A member received his first month of eligibility by accumulating 300 recreation hours, and he received 1 additional month for every additional 80 hours accumulated.

After the first month, a member could also pay $30 to obtain 1 month of eligibility if he did not have sufficient recreation hours. Such eligibility rules were formulated by the union in 1977; prior to that time, Mr. Briggs and Mr. Hurbi had no vested rights in the recreation centers.

In 1975, Mr. Briggs paid $1,410.21 as dues to Local 959. Of this amount, $144 was monthly dues, and $1,266.21 was payroll deductions. The payroll deductions were allocated on the accounting records of Local 959 as follows:

| | |
|---|---|
| Strike fund ..................... | $474.84 |
| Recreation centers ............. | 474.84 |
| Credit union ..................... | 221.52 |
| Building fund ................... | 95.01 |

In 1976, $909.12 was withheld as union dues from Mr. Hurbi's wages, and he also paid monthly dues. The payroll deductions were allocated on the accounting records of Local 959 as follows:

| | |
|---|---|
| Strike fund ..................... | $433.24 |
| Recreation centers ............. | 285.53 |
| Credit union ..................... | 133.24 |
| Building fund ................... | 57.11 |

On their Federal income tax return for 1975, Mr. and Mrs. Briggs deducted $1,405.68 for union dues, and on his Federal income tax return for 1976, Mr. Hurbi deducted $1,239.61 for union dues. In his notices of deficiency, the Commissioner determined that the monthly dues and the portions of the hourly dues allocated to the strike fund were deductible, but he disallowed the remainder of the claimed deductions.[2] The petitioners concede that the portions of the dues allocated to the credit union were not deductible.

The issues to be decided are whether the portions of the dues allocated to the building fund and to the recreation centers were deductible under section 162(a). That section allows a deduction for all the ordinary and necessary expenses incurred in carrying on a trade or business. Section 1.162–1(a), Income Tax Regs.,

---

[2]In his notices of deficiency, the Commissioner determined that Mr. Briggs' payments to the strike fund totaled $630.84 and that Mr. Hurbi's payments to such fund totaled $441. In amended answers, the Commissioner reduced his determinations to conform to the stipulated facts. In the case of Mr. Hurbi, he also determined that the allowable monthly dues were $144, and Mr. Hurbi has not challenged that adjustment.

provides that, to be deductible, business expenses must be "directly connected with or pertaining to the taxpayer's trade or business." The taxpayer's employment is his trade or business (*Motto v. Commissioner*, 54 T.C. 558 (1970); *Primuth v. Commissioner*, 54 T.C. 374 (1970)), and section 1.162–15(c), Income Tax Regs., provides that "Dues and other payments to an organization, such as a labor union * * * , which otherwise meet the requirements of the regulations under section 162, are deductible in full." The petitioners have the burden of proving that the dues were ordinary and necessary business expenses of their employment. *Sanford v. Commissioner*, 50 T.C. 823, 826 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969).

We deal first with the dues allocated to the building fund. Since the petitioners were required to pay the dues to maintain their membership in the union, and since they had to be members of the union in order to hold their jobs, it is clear that the petitioners were required to pay the dues as a condition of their employment.[3] Yet, the Commissioner takes the position that such dues were used to purchase certificates in the building fund and that therefore such dues were not business expenses but were nondeductible savings or investments. On the other hand, the petitioners insist that the certificates were worth substantially less than their face amount, and they argue that under several decisions of this Court, a union member is entitled to deduct the entire amount of the dues unless an asset of approximately equal value is received in return for the payment of the dues. See *Cohen v. Commissioner*, 63 T.C. 267 (1974), affd. per curiam 543 F.2d 725 (9th Cir. 1976); *Megibow v. Commissioner*, 21 T.C. 197 (1953), affd. 218 F.2d 687 (3d Cir. 1955); *Taylor v. Commissioner*, 2 T.C. 267 (1943), affd. sub nom. *Miller v. Commissioner*, 144 F.2d 287 (4th Cir. 1944).

In support of their conclusion as to the value of the certificates, the petitioners assert on brief that it is unlikely that the union will ever declare the building program ended or that it will pay reasonable interest on the certificates if it does so. They also point out that although an employee is entitled to redeem his certificates when he leaves the union because of retirement or

---

[3]Although we have not been able to find that Mr. Hurbi was required to be a member of the union while employed by RCA, the parties so assume.

otherwise, he is not entitled to any interest on such a redemption, and they argue that since there is no right to receive reasonable interest on the certificates, their present value is a good deal less than their face amount. Yet, the only facts in the record concerning the duration of the building program are the stipulated facts that the program has been in progress since 1963, that the union hopes to organize more workers in Alaska and will need more office space if successful, and that an old building in Juneau will probably have to be replaced in the near future. There is no evidence of any definite building plans, and there is no statement by any union official corroborating the petitioners' assertions. On the evidence before us, we cannot find that the building program is unlikely to end. Moreover, even if we were to find that building plans do exist for the next several years, there is no evidence that the building program would not end immediately thereafter or that such plans would not be financed from a new building program. In addition, there is no indication in the record that the union would not pay a reasonable rate of interest when it redeems the certificates.

The petitioners presented no evidence showing the actual value of the certificates in the building fund or that the value of such certificates was less than the dues allocated to their purchase. It may be that without a guaranteed right of redemption at a reasonable rate of interest, the value of the certificates was less than the price. Nevertheless, the certificate holder is entitled to some return on the certificate, and he may actually realize its full value on redemption. Under such circumstances, the petitioners' dues allocated to the building fund resulted in their acquiring rights of substantial value.

The case law is clear that when a taxpayer makes a payment and receives therefor property of substantial value, he is not entitled to deduct the entire amount, if any part, of such payment. For example, in *United States v. Mississippi Chemical Corp.*, 405 U.S. 298 (1972), the taxpayer, a farm cooperative, borrowed money from one of the banks for cooperatives established under Federal law. In order to receive the loan, the taxpayer was required to purchase stock in the bank at a price greatly exceeding the stock's value. The taxpayer deducted the excess of the price over the value as interest, but the Supreme Court disallowed the entire deduction. The Court reasoned that although the taxpayer made the payment in order to borrow

money, the taxpayer had not incurred a deductible expense since the payment was cast in the form of a payment for stock and since "this stock was endowed with a long-term value." 405 U.S. at 312.

Similarly, in *Ancel Green & Co. v. Commissioner*, 38 T.C. 125 (1962), and *McMillan Mortgage Co. v. Commissioner*, 36 T.C. 924 (1961), the taxpayer, a mortgage lender, sold mortgages to the Federal National Mortgage Association. As a condition of each sale, the taxpayer also purchased stock of the association at a price substantially higher than the stock's value. We considered whether the taxpayer was entitled to deduct any part of the payments for the stock. We held that the taxpayer was entitled to a deduction, but we specifically recognized that the deduction was limited to the excess of the price of the stock over its value. 38 T.C. at 129; 36 T.C. at 931.

Finally, in *Jordan v. Commissioner*, 60 T.C. 872 (1973), affd. per curiam 514 F.2d 1209 (8th Cir. 1975), the taxpayer, who was one of the promoters of a corporation, purchased stock in the corporation from certain individuals in order to settle litigation brought by the individuals for misrepresentation in the original issuance of stock by the corporation. The taxpayer believed that the purchase price of the stock was substantially greater than the value of the stock, and therefore, he deducted the excess as a business expense relating to the litigation. We found that the purchase price was in fact not in excess of value and that the entire amount was paid for the purpose of acquiring the stock, and we disallowed the deduction. In reaching our decision, we recognized that, in general, when a taxpayer acquires an asset at a price exceeding the value of the asset, he may be entitled to a deduction, but we also recognized that the amount of the deduction is limited to the excess of price over value. 60 T.C. at 879.

The petitioners' reliance on *Cohen, Megibow,* and *Taylor* is misplaced. Each of those cases involved the issue of whether an employee of the Federal Government was entitled to exclude from his gross income his mandatory contribution to the Civil Service Retirement and Disability Fund, and in each case, this Court held that the employee was not entitled to such an exclusion. In part, the rationale of those cases was that the present value of pension rights acquired by the employee as a result of his contribution was equal or greater than the amount

of the contribution and that, accordingly, the employee had income in the form of the future rights. *Cohen v. Commissioner*, 63 T.C. at 282–283; *Megibow v. Commissioner*, 21 T.C. at 200; *Taylor v. Commissioner*, 2 T.C. at 271. However, the petitioners read too much into our decisions. *Cohen, Megibow*, and *Taylor* nowhere indicate that when the present value of property rights received by an employee is exceeded by the amount of the contribution, the employee is entitled to exclude or deduct the entire contribution from income.

In this case, the petitioners acquired valuable certificates in return for the dues allocated to the building fund, and therefore, it is clear that the petitioners did not incur an expense equal to the full amount of dues allocated to the building fund. Under the rationale of *Mississippi Chemical, McMillan Mortgage, Ancel Greene*, and *Jordan*, they are not entitled to deduct the entire amount of such dues.[4] Moreover, here, the petitioners have made no claim for a partial deduction. They have presented no evidence from which we could determine whether, or to what extent, the prices paid for the certificates exceeded their value. On this record, we will express no opinion as to whether a partial deduction would be allowable. Accordingly, we hold that the petitioners have not shown that they were entitled to deduct the dues allocated to the building fund.

We deal next with whether the dues allocated to the recreation centers were deductible. To begin, there is no doubt that if Mr. Briggs or Mr. Hurbi had simply paid money, individually, to build recreation facilities for personal use, such amounts would have constituted personal expenditures which are nondeductible under section 262. Amounts expended by an employee to maintain his health and well being are personal expenses, even if the expenditures are helpful or even essential to his employ-

---

[4]The petitioners also argue that Rev. Rul. 54–190, 1954–1 C.B. 46, supports their position. That ruling considered the question of whether assessments paid by union members to a pension fund are deductible as a business expense. The ruling held that although the union members receive rights to future income in return for the assessments, the assessments are deductible since "A member must pay his assessments to remain in the union and keep a union job," and since "it does not appear that the personal value of each member's interest in the pension fund ordinarily approximates what he pays into the fund so as to make his assessment payment a personal expense or consideration for an annuity." 1954–1 C.B. at 47. However, IRS appears to have limited that ruling to contributions to pension funds. Thus, in Rev. Rul. 72–463, 1972–2 C.B. 93, it was held that amounts paid by a union member into a union death-benefits fund are personal expenses and therefore nondeductible.

ment. *Smith v. Commissioner*, 40 B.T.A. 1038 (1939), affd. per curiam 113 F.2d 114 (2d Cir. 1940); see also *Carroll v. Commissioner*, 51 T.C. 213 (1968), affd. 418 F.2d 91 (7th Cir. 1969); *Yeomans v. Commissioner*, 30 T.C. 757 (1958); *Bruton v. Commissioner*, 9 T.C. 882 (1947). The Commissioner contends that, in like manner, the dues allocated to the recreation centers were personal expenditures and not deductible.

The Treasury regulations interpret section 162(a) to allow a deduction for union dues, but the deduction is restricted to the dues which constitute business expenses within the meaning of that section. Sec. 1.162–15(c), Income Tax Regs. Over the years, the Internal Revenue Service has issued several rulings in which the Service has repeatedly held that union dues are deductible, but those rulings have expressly held that a deduction is not allowed for dues which constitute a personal expense. For example, I.T. 2888, XIV–1 C.B. 54 (1935), held that union assessments used to provide medical, accidental, and death benefits are personal expenses and therefore nondeductible. Similarly, Rev. Rul. 69–214, 1969–1 C.B. 52, stated that a payment by a union member is not deductible if such payment "serves to defray an expense of a personal nature." The issue in the ruling was whether a fine paid by a union member to a union is a deductible business expense, and the ruling held that such a payment is not personal and therefore is deductible. Finally, Rev. Rul. 72–463, 1972–2 C.B. 93, reiterated the position of I.T. 2888 in holding that union assessments used to provide death benefits are nondeductible personal expenses. In disallowing a deduction for personal expenses, such rulings are consistent with the Code and regulations, and they establish a longstanding administrative practice which is entitled to special weight in construing and applying section 162(a). *United States v. Correll*, 389 U.S. 299 (1967); *McMenamy v. Commissioner*, 54 T.C. 1057 (1970), affd. 442 F.2d 359 (8th Cir. 1971).

The petitioners take the position that the dues were business expenses since Mr. Briggs and Mr. Hurbi were required to pay the dues to keep their jobs. It is true that Sealand and ITT required the petitioners to be members in good standing of Local 959. Yet, Mr. Briggs and Mr. Hurbi had union votes equal to those of the other members, and so far as the record discloses, the union was in no way compelled by law or other authority to build recreation centers. The union was but an organization of

individuals, and through it, individuals expended money on a variety of goods and services, including recreation centers. The mere fact that an organization, and not individuals, expended money on the recreation centers cannot convert personal expenses into business expenses. The situation is no different from that of neighbors who pool their resources to build a common tennis court or similar structure; their expenditures are not rendered business expenses merely because they have joined together. Local 959, although not a purely voluntary organization, was nevertheless controlled by its members; having decided to make personal expenditures through the union, the members cannot now claim that their dues so allocated were business expenses.

Moreover, if the petitioners' argument were adopted, the union could provide its members with housing, food, and other personal facilities and include the costs thereof as a part of the union dues; as a result, the members would be allowed a deduction for virtually all their personal expenses. Such a result would clearly distort the purpose of section 162(a), and it makes clear that lines must be drawn—the deduction for union dues cannot be extended to cover personal expenses.

Next, the petitioners argue that in 1975 and 1976 when the dues were collected, they had no right to the use of the recreation centers since the officials of Local 959 were not under a binding obligation at that time to build the recreation centers; therefore, they conclude that such dues could not have constituted expenditures for their personal benefit when they were collected. However, whether or not union officials were obliged in some sense to build recreation centers, it is a fact that dues were allocated to them, and so far as the record discloses, the dues would not have been increased in 1974 and 1975 had it not been for the plan to build the centers. Moreover, the union, of course, was controlled ultimately, not by its officials, but by its members, and its members ultimately decided how to spend its revenues. If elected officials had not gone forward with the centers, the members could have replaced the officials.

Finally, the petitioners maintain that, because of the location of the recreation centers and because of the eligibility rights established by the union for their use, each member of the union did not have an equal right to the use of the centers and that each member did not receive a right which equaled the value of

the dues allocated to the recreation centers. It is true that the location of the centers or the eligibility requirements may prevent some members of the union from deriving any benefit from the centers; on the other hand, the value of the benefits received by other members may far exceed their dues allocated for that purpose. In any event, the dues allocated for the construction of the recreation centers were used for the personal benefit of the union members in the aggregate, and such dues were not used by the union to carry out its responsibilities for the maintenance of the members' employment or for the improvement of their conditions of employment. Accordingly, we conclude and hold that the dues allocated to the construction of the recreation centers were not an ordinary and necessary business expense within the meaning of section 162(a) and are not deductible.

*Decisions will be entered for the respondent.*