Tom H. and Reba Louise HAGAN, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1695.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Sept. 13, 1963.

---

Daily & Woods, Fort Smith, Ark., for plaintiffs.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., Robert L. Waters, Tax Division, Dept. of Justice, Fort Worth, Tex., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by plaintiffs-taxpayers, Tom H. Hagan and his wife, Reba Louise Hagan, to recover $3,361.11 paid under protest to the United States on December 30, 1960. In the plaintiffs' 1958 joint federal income tax return they deducted $8,500.00 as a business bad debt. The Commissioner of Internal Revenue did not allow this deduction and assessed a deficiency against the plaintiffs for the year 1958 in the amount of $3,061.66 with interest in the amount of $299.45.

The pertinent allegations in the plaintiffs' complaint are set forth in paragraphs 5 through 9, as follows:

"5. In the plaintiffs' 1958 joint Federal Income Tax Return they deducted $8,500.00, the total amount invested by the plaintiff, Tom H. Hagan, in the corporate capital stock of Washburn Feeders Supply, Inc., and which stock had become worthless during the year 1958, as a business bad debt.

"6. The Commissioner of Internal Revenue erroneously classified this loss as a non-business bad debt and erroneously disallowed a deduction of $8,500.00 as a business bad debt under 1954 Internal Revenue Code, Sec. 166, and the regulations thereunder, or, in the alternative, as a loss incurred in the trade or business of taxpayer, under Sec. 165, and the regulations issued thereunder, or as a business expense under Sec. 162(a), and the regulations issued thereunder.

"7. Based upon the above mentioned erroneous determination, the Commissioner assessed against the plaintiffs an income tax deficiency for the year 1958 in the amount of $3,061.66. This erroneous assessment, together with interest in the amount of $229.45 [$299.45], a total of $3,361.11, was paid by the taxpayers, the plaintiffs, to the District Director of Internal Revenue for the State of Arkansas on December 30, 1960, under protest.

"8. On August 1, 1961, plaintiffs filed with the District Director of Internal Revenue in Little Rock, Arkansas, their claim for refund for the entire amount of the deficiency assessment for the year 1958. A copy of said claim for refund is attached hereto, made a part hereof, and marked 'Exhibit A'.

"9. By registered letter dated February 7, 1962, the Commissioner of Internal Revenue rejected plaintiffs' claim for refund. A copy of said letter is attached hereto, made a part hereof, and marked 'Exhibit B'."

The defendant, United States, in its answer denies the Commissioner's determination was erroneous, but admits the allegations contained in paragraphs 5, 7, 8 and 9 of the plaintiffs' complaint.

On June 26, 1963, the case was tried to the court, at which time both parties introduced oral and documentary evidence. At the conclusion of the trial the case was submitted and taken under advisement by the court. The parties were directed to submit briefs in support of their contentions which have been re-

ceived and the cause is ready for disposition.

The pertinent facts as developed by the testimony at the trial and as admitted in the pleadings are not in dispute. The inferences to be drawn from them pose the major difficulty in the determination of the parties' contentions.

The plaintiff, Tom H. Hagan, hereinafter referred to as Hagan, is and was employed as field representative and salesman of Ralston-Purina Company which manufactures poultry feed, medicine and allied products. Hagan's sole income was derived from his employment with Ralston-Purina, and consisted of commissions earned by him as supervisor and salesman himself of the products of Ralston-Purina. Prior to 1954 one of Hagan's regular customers for the purchase of Ralston-Purina products was Ray Stewart & Son, a wholesale and retail dealer in poultry feed, medicine and allied products in Washburn, Missouri. In 1954 Ray Stewart & Son decided to discontinue its business as a partnership. The principal owner proposed to retire by reason of age, and suggested a corporation be formed to carry on the business of the former partnership, Ray Stewart & Son. Mr. Arthur Smith, a banker at Cassville, Missouri, agreed to loan the proposed corporation the sum of $30,000.00 for initial operating capital provided $30,000.00 or more in capital stock could be sold. Smith further conditioned the loan commitment upon promoters of the proposed corporation inducing Hagan to become a stockholder. Hagan had long experience and competence in the business of buying and selling and supplying poultry producers with their requirements of poultry products. The partners of Ray Stewart & Son, together with Arthur Smith and others approached Hagan to induce him to make a capital subscription of $5,000 to the proposed new corporation, Washburn Feeders Supply, Inc., with the stipulation that Washburn Feeders Supply, Inc., would give Hagan its exclusive business of purchases of poultry feed, medicine and allied products manufactured

by Hagan's employer, Ralston-Purina Company. Hagan committed himself to purchase $5,000 of the par value of the stock of Washburn Feeders Supply, Inc., and in 1954 $5,000 of the capital stock was issued in the name of his wife, Reba Louise Hagan, because of a rule of his employer, Ralston-Purina Company, prohibiting its salesmen from purchasing interests in their customers' businesses. Subsequently, Hagan transferred the stock certificates which were in his wife's name to Carl W. Grigg. Grigg executed a promissory note payable to Hagan with no interest; the note was merely to evidence Hagan's investment in the capital stock of Washburn Feeders Supply, Inc. Grigg and Hagan agreed that the note would be held by Hagan, and at any time Grigg desired he might transfer the stock to Hagan who would surrender the note to him.

In 1957 Hagan purchased additional capital stock of Washburn Feeders Supply, Inc., from Elry Aaron, one of the original incorporators, for the sum of $2,500, which was taken in Grigg's name, with the assurance of having the continued exclusive sales to the corporation of its required feed, medicine and poultry products manufactured by Ralston-Purina Company. Aaron was also a dealer who purchased all of the feed, medicine and poultry products sold by him from Hagan as a representative of Ralston-Purina Company. Aaron's business was also suffering and it became necessary for him to raise some money. Hagan did not want Aaron's business to fail, and he did not want anyone as a stockholder in Washburn Feeders Supply, Inc., who might not desire to handle the Ralston-Purina products exclusively. Thus he purchased Elry Aaron's stock with the same motive that induced him to become an original stockholder in Washburn Feeders Supply, Inc.

Subsequently, Washburn Feeders Supply, Inc., assessed the stockholders 10 percent of their par value shares. The assessment of the stock shares which were in Grigg's name amounted to $1,000, all of which was paid by Hagan. The

total contribution to the capital of Washburn Feeders Supply, Inc., by Hagan, and as listed on his and his wife Reba's joint income tax return of 1958, was $8,500. Washburn Feeders Supply, Inc., became insolvent in 1958 and closed its doors and its stock became worthless.

The plaintiff Hagan contends that a deduction should be allowed for his loss due to the insolvency of Washburn Feeders Supply, Inc., under Section 162 (a), 165 or 166 of the 1954 Internal Revenue Code and regulations thereunder, 26 U.S.C. §§ 162(a), 165, 166.

The defendant, United States of America, contends that the loss, if any, suffered by the taxpayer was not incurred in his trade or business, and is not deductible as either a business expense under Section 162(a) nor as a business loss under Section 165(a), as the taxpayer's loss was not occasioned by reason of his investment in Washburn Feeders Supply, Inc., but rather was occasioned by reason of the taxpayer's having guaranteed his transferee, Grigg, against any loss on the stock.

Section 166 provides for deduction of both business and nonbusiness bad debts. The parties agreed at the trial that Section 166 was not applicable. The conduct of Hagan, Grigg, and Washburn Feeders Supply, Inc., does not establish that the relationship of debtor-creditor was intended or that it, in fact, existed, and thus Section 166 is inapplicable. Therefore, Whipple v. Commissioner, (1963), 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288, which defendant cites in reference to Section 166 is not in point. The primary question discussed in that case was the distinction between a business and nonbusiness bad debt resulting from loans the taxpayer advanced to a corporation, and no loans are involved in the present case.

The plaintiff Hagan, to be allowed a full deduction for his contribution to the capital structure of Washburn Feeders Supply, Inc., must have invested within the scope of either Section 162(a) or Section 165(a).

The critical factor in the instant transaction is the motive or intent with which it was consummated, although the plaintiff Hagan, in effect, guaranteed that Grigg risked no loss if the stock declined in value or became worthless, but could profit by any increase in value of the stock or benefit from any dividends declared thereon in the event the business was profitable. In order to so benefit, Grigg could pay his note without interest in exactly the amount that Hagan had invested in the capital structure of Washburn Feeders Supply, Inc. The uncontradicted evidence of the plaintiff sustains his contention that he, the plaintiff, was in fact the actual owner of the stock in question and was so regarded by all parties involved prior to and at the time it became worthless. This is further evidenced by the fact that the 10 percent assessment of the par value of the stock shares which were in Grigg's name was paid by the plaintiff Hagan.

In Weather-Seal, Inc., v. Commissioner (T.C. Memo. 1963–102, filed April 8, 1963), the taxpayer purchased corporate stock in retail outlets which it formed to retain sales outlets for its manufactured products. Losses from the stock transactions were held fully deductible as business losses or as a business expense under either Sec. 162(a) or Sec. 165(a), and such losses were not limited to deductions as capital losses because it was evident the petitioner's sole concern was directed to the preservation of its existing business.

In Arlington Bowling Corp. v. Commissioner, (T.C. Memo. 1959–201, filed October 26, 1959), a taxpayer purchased stock in a manufacturing corporation to insure a steady supply of equipment. The Tax Court held that the worthless stock was deductible at cost under Sec. 162(a) as a business expense or as a business loss under Sec. 165(a). The Tax Court stated at page 898:

" * * * Such a finding does not support the respondent's contention that the loss sustained on the worthlessness of the stock in 1955 is deductible only under section 165(g)

as limited by section 1211 for the reason that the stock was a 'capital asset' as that term is defined in section 1221 of the 1954 Code. The loss here arose from the everyday operation of petitioner's business and as such is deductible in full either as an ordinary and necessary business expense or as a business loss."

The same result in Electrical Fittings Corp. v. Commissioner, 33 T.C. 1026 (1960).

In Tulane Hardwood Lumber Co., Inc. v. Commissioner, 24 T.C. 1146 (1955), a taxpayer purchased bonds in a plywood manufacturer to insure a steady supply of inventory, and the Tax Court held the loss by virtue of the debentures' becoming worthless was fully deductible as either a business expense or a business loss under Section 23(a) (1) of the Internal Revenue Code of 1939. The same result in Smith & Welton, Inc., v. United States, (E.D.Va.1958), 164 F.Supp. 605.

In Booth Newspapers, Inc. v. United States, (Ct.Cl.1962), 303 F.2d 916, at page 921, the Court of Claims stated:

" * * * if securities are purchased by a taxpayer as an integral and necessary act in the conduct of his business, and continue to be so held until the time of their sale, any loss incurred as a result thereof may be fully deducted from gross income as a business expense or ordinary loss. If, on the other hand, an investment purpose be found to have motivated the purchase or holding of the securities, any loss realized upon their ultimate disposition must be treated in accord with the capital asset provisions of the Code.

\* \* \* \* \* \*

" 'The tax treatment of a loss on the sale of * * * stock depends on the purpose for which the petitioner acquired the stock. Stock purchased as an investment is a capital asset; when sold, it creates a capital gain or loss. But stock purchased in the oridinary course of business where the only purpose is

to insure a vital source of inventory is not a capital asset, and the loss upon its sale is deductible from ordinary income.' "

In Helen M. Livesley v. Commissioner (1960), 19 T.C. Memo. 133, taxpayer purchased stock in a supplier to insure a steady supply of inventory for resale and the stock became worthless. The worthless stock was held fully deductible, and at page 137 the court said:

"The purchase of the company's stock was a reasonable and necessary act in the conduct of the partnership's business at the time and it did not intend to hold the stock indefinitely or as an investment."

In Commissioner of Internal Revenue v. Bagley & Sewall Co. (2 Cir.1955), 221 F.2d 944, at page 946:

" 'Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances'. Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, at page 475, 64 S.Ct. 249, at page 254, 88 L.Ed. 171. The purchase of stock in order to terminate an agency contract was held to be business expense. Helvering v. Community Bond & Mortgage Corporation, 2 Cir., 74 F.2d 727. The purchase of stock in a non-profit corporation to aid business was held to be a business expense. Commissioner of Internal Revenue v. The Hub, 4 Cir., 68 F.2d 349. The purchase of stock of a liquor corporation in order to purchase liquor therefrom was held to be business expense. Hogg v. Allen, D.C., 105 F.Supp. 12, affirmed, Edwards v. Hogg, 5 Cir., 214 F.2d 640, 644."

In Byerlite Corporation v. Williams (6 Cir. 1960), 286 F.2d 285, at page 291, the court said:

" * * * and where a taxpayer was required to purchase shares of stock in one of its supplier corporations in order to obtain merchandise which otherwise would go to a com-

petitor, the court ruled that it was not an investment, even though carried on the taxpayer's books as an 'investment account.' The court held that the stock was acquired without investment purpose and only for the taxpayer's business purposes and, hence, was deductible as a business expense. * * *

"From the foregoing, it appears that losses of great sums of money resulting from large loans to corporations with slight capital, and even purchases of stock in corporations, are held not to be investments in capital, where the intent to invest was not present and where the funds were loaned, or stock purchased, only to promote the business purposes of the stock purchaser or lender."

The evidence adduced by the plaintiff convincingly supports his contention that his sole concern in making contributions to the capital structure of Washburn Feeders Supply, Inc., was to protect and retain a valuable source of purchases of his employer's products from which he received commissions. The fact that the plaintiff's sole source of income was derived from his employment with Ralston-Purina Company is further evidence of plaintiff's contention that he wanted to protect and retain this source of purchase of products he sold. It is also apparent that during the years the plaintiff purchased stock of no other corporations and had no other investments whatever.

The defendant cites Missisquoi Corp. v. Commissioner (1962), 37 T.C. 791, and Gulftex Drug Co., Inc. v. Commissioner, 29 T.C. 118, aff'd per curiam, 261 F.2d 238 (C.A.5th), which held that an investment made with the requisite intent may not be fully deducted if such business purpose ceases to exist and the taxpayer continues to retain the investment for an extended period of time. On the same point Smith & Walton, Inc. v. United States (E.D.Va.1958), 164 F.Supp. 605, allowed a full deduction although a year had elapsed after the taxpayer's business reason to hold the investment had ceased.

Although there is a division of the authorities as to the effect of continuing to hold an investment after the purpose for acquisition has ceased, they are not relevant in the instant case, as the business purpose for which they were held continued until the very day they became worthless.

Thus the court is of the opinion that the plaintiff Hagan's loss of $8,500 is fully deductible as either a business expense under Section 162(a) or as a business loss under Section 165(a), (c) (1) of the 1954 Internal Revenue Code and regulations thereunder, 26 U.S.C. §§ 162 (a), 165(a), (c) (1).

Therefore, the plaintiffs, Tom H. and Reba Louise Hagan, are entitled to recover from the defendant the sum of $3,361.11, together with interest thereon at the rate of 6 percent per annum from December 30, 1960.

A judgment in accordance with the above is being entered today.