Ponca Tank Corporation v. Commissioner.
Ponca Tank Corp. v. Commissioner
Docket No. 4877-65.
United States Tax Court
T.C. Memo 1967-177; 1967 Tax Ct. Memo LEXIS 82; 26 T.C.M. (CCH) 866; T.C.M. (RIA) 67177; August 30, 1967
*82 Petitioner, which was engaged in the business of salvaging and restoring oil storage tanks, sold a number of oil tanks to Ponca Grain Corporation, a corporation formed to store grain. Petitioner performed much of the work of converting the oil tanks to grain storage tanks. Petitioner later acquired stock in Ponca Grain Corporation, which stock was thereafter sold at a substantial loss. Held: Petitioner has failed to prove that it acquired the Ponca Grain Corporation stock for a purpose other than investment, and therefore, the loss on its sale was a capital loss. Milton Zacharias, for the petitioner. James F. Hart, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: Respondent determined deficiencies in the petitioner's income tax of $28,886.58 for the taxable year ended June 30, 1960, and $16,061.55 for the taxable year ended June 30, 1963. The respondent's adjustment for the year ended in 1960 was the result of the elimination of a net operating loss reflected on the petitioner's return for the year ended in 1963. The only issue remaining for decision is whether a loss sustained by the petitioner on the sale of the stock of Ponca Grain Corporation is allowable as an ordinary loss or as a capital loss. Findings of Fact Some of the facts were stipulated, and those facts are so found. The petitioner was organized in the State of Oklahoma by Morris Dritch on July 1, 1958, for the purpose of engaging in the business of salvaging and restoring oil storage tanks. The petitioner *84 filed its Federal income tax returns, using the accrual method of accounting, for its taxable years ended June 30, 1960, and June 30, 1963, with the district director of internal revenue at Oklahoma City, Oklahoma. Its principal place of business was Ponca City, Oklahoma, at the time the petition was filed in this case. On July 1, 1958, Morris Dritch transferred all of the assets and liabilities of his sole proprietorship, Ponca Tank, to the petitioner for $20,000 of its capital stock. Morris Dritch owned all of the outstanding stock of the petitioner from the date of incorporation until his death in December of 1962, and since that time, all of the petitioner's outstanding stock has been owned by the estate of Morris Dritch. Ponca Grain Corporation (Ponca Grain) was incorporated in the State of Oklahoma on August 15, 1958, with 175,000 shares of $1 par value common stock, for the purpose of receiving and storing grain. The common stock of Ponca Grain was originally issued 75,000 shares to Morris Dritch, 73,000 shares to M. F. Mulroy, and 2,000 shares to the sons of M. F. Mulroy. The petitioner paid $65,000 on August 7, 1958, and $10,000 on August 18, 1958, to Ponca Grain. This *85 transaction was recorded on the books of the petitioner as a debit to accounts receivable, Morris Dritch, and a credit to cash with a notation that the payments were for stock in Ponca Grain. On June 30, 1960, Morris Dritch transferred his 75,000 shares of common stock in Ponca Grain to the petitioner. This transaction was recorded on the petitioner's books as a debit to "Investment Ponca Grain Co. Stock" and a credit to "Accounts Receivable-Morris Dritch" with this notation: "To set up purchase of Ponca Grain Co. stock erroneously charged to M. Dritch-Personal." At the time the petitioner and Ponca Grain were formed in 1958, the grain storage business was very profitable. Various types of facilities were needed, including converted oil tanks, to store Government grain. The process of converting oil tanks to grain storage facilities included removing sludge and foreign matter from the tanks, cleaning the tanks to make them safe for storage of grain, repairing leaks, and installing aeration and temperature detection systems and grain handling equipment. Shortly after the organization of Ponca Grain, the petitioner sold a number of oil storage tanks that it had purchased for about *86 $93,000 to Ponca Grain at a price of about $139,000. On the tanks purchased by Ponca Grain from the petitioner, approximately two-thirds of the modification work was performed by the petitioner and one-third was performed by Ponca Grain. In such work performed by it, the petitioner attempted to maintain a gross profit margin of about 50 percent. The following schedule shows the total gross sales of the petitioner and its gross sales to Ponca Grain: Total Gross Sales
Percentage of
Fiscal Year
Reported on
Gross Sales to
Total Gross Sales
Ended
Tax Returns
Ponca Grain
Made to Ponca Grain
June 30, 1959
$1,162,834.60
$200,000.00
17.2
June 30, 1960
360,566.63
158,007.06
43.8
June 30, 1961
953,092.94
70,649.92
7.4
June 30, 1962
774,611.02
38,786.49
5.0
June 30, 1963
230,849.97
38,043.80
16.5
Totals
$3,481,955.16
$505,487.27
14.5 The petitioner also had customers in Oklahoma, Kansas, and Texas. The president of Ponca Grain was M. F. Mulroy, who, in 1958, had over 50 years of experience in the grain business. M. F. Mulroy did not own any stock or have any interest in the petitioner. He purchased his stock in Ponca Grain as an investment *87 and for the purpose of making money and had no interest in furthering the business of the petitioner. On April 20, 1963, the stockholders of Ponca Grain sold their stock to Business Counselors, Inc., for $1,000, of which $500 was paid to the petitioner. On the petitioner's books, the sale was recorded by a $500 debit to "Cash", a $74,500 debit to "Loss on Sale of Capital Assets", and a $75,000 credit to "Investment in Capital Stock". On its tax return for the taxable year ended June 30, 1963, the petitioner claimed an ordinary loss deduction of $74,500 for the loss on the sale of the Ponca Grain stock. Opinion The issue in this case is whether a loss of $74,500 sustained by the petitioner from the sale of Ponca Grain stock is allowable as an ordinary and necessary business expense under section 162 of the Internal Revenue Code of 1954[1] or as a business loss under section 165(a) or as a capital loss under section 165(f). The petitioner contends that it purchased a 50-percent interest in Ponca Grain to obtain an outlet for the profitable sale of a number of oil storage tanks it *88 had acquired and also to develop a "captive customer" for materials and services incident to modification and conversion of the tanks. The petitioner argues that acquisition of a captive customer is a legitimate course of conduct in the operation of a business, and that therefore a loss resulting from the sale of stock of the captive customer should be treated as a business loss sustained in the pursuit of a normal business purpose. The petitioner relies upon a line of cases that have allowed an ordinary loss deduction on the sale of corporate securities where such securities were purchased by a taxpayer to assure a source of supply or materials necessary to the conduct of the taxpayer's business. See, e.g., Electrical Fittings Corporation, 33 T.C. 1026 (1960); Tulane Hardwood Lumber Co., 24 T.C. 1146 (1955); Western Wine & Liquor Co., 18 T.C. 1090 (1952). The petitioner believes that the rationale of that line of cases is sufficiently broad to cover the situation where corporate securities are purchased by a taxpayer to obtain an outlet for the sale of the taxpayer's products. Throughout its presentation of this case, the petitioner has assumed *89 that it purchased the Ponca Grain stock in August of 1958 when Ponca Grain was organized. However, the record indicates that the Ponca Grain stock was owned by Morris Dritch until June 30, 1960, when the stock was then transferred to the petitioner. The petitioner's books, concerning the June 30, 1960, transfer of Ponca Grain stock from Morris Dritch to the petitioner, do contain the notation "To set up purchase of Ponca Grain Co. stock erroneously charged to M. Dritch-Personal", but this is not sufficient proof that the petitioner was either the owner of record or the beneficial owner of the Ponca Grain stock from August 1958 to June 30, 1960. The stock record book of Ponca Grain shows that its stock certificate No. 1 was issued to Morris Dritch on August 16, 1958, for 75,000 shares. The U.S. Corporate Income Tax Return filed by Ponca Grain for its taxable year ended July 31, 1959, listed Morris Dritch as owning 75,000 shares of common stock of Ponca Grain. M. F. Mulroy, president of Ponca Grain, testified that 75,000 shares of Ponca Grain stock were issued to Morris Dritch in 1958 and then transferred by Morris Dritch to the petitioner in 1960. And the petitioner's books for 1958 *90 treated Morris Dritch as the owner of the Ponca Grain stock. In view of these facts, we find that the petitioner acquired the Ponca Grain stock on June 30, 1960; consequently, the determination of its purpose in acquiring such stock must be based upon an examination of the circumstances existing at that time. The cases on which the petitioner relies hold that if corporate securities are purchased not for investment purposes but for the purpose of acquiring inventory or materials necessary to the operation of the taxpayer's business, then the securities are not capital assets in the hands of the taxpayer. E.g., Electrical Fittings Corporation, supra; Tulane Hardwood Lumber Co., supra; Western Wine & Liquor Co., supra. The petitioner must show that it is entitled to an ordinary loss deduction, Welch v. Helvering, 290 U.S. 111 (1933), and in order to show this, the petitioner must prove that it acquired the Ponca Grain stock for some purpose other than as an investment. The record is completely inadequate as to the petitioner's purposes in acquiring the Ponca Grain stock. It is only in its arguments to the Court that the petitioner *91 states that its purpose in purchasing the Ponca Grain stock was to acquire a captive customer for its products and services. The petitioner argues on brief that one of its purposes was to acquire a customer for the sale of its oil storage tanks. However, the record shows that the oil storage tanks were sold to Ponca Grain shortly after Ponca Grain was organized and that the petitioner did not acquire the Ponca Grain stock until June 30, 1960 - almost 2 years after the sale of the tanks. The petitioner argues that it also acquired the Ponca Grain stock so that it could make a profit on converting and servicing the oil storage tanks. Yet the petitioner's sales of products and services to Ponca Grain declined after Ponca Grain became a captive customer of the petitioner on June 30, 1960. About 70 percent of the petitioner's total gross sales to Ponca Grain took place in the less than 2 years before the petitioner acquired the Ponca Grain stock, and only about 30 percent took place in the 3 years after it acquired such stock. For these reasons, we conclude that the petitioner has failed to prove that it acquired the Ponca Grain stock for a purpose other than as an investment. Even if *92 we considered that Morris Dritch acquired and held the stock for the petitioner so that it could be considered the beneficial owner of the stock from 1958 until it acquired legal ownership in 1960, still there is a failure of proof. Ponca Grain did make purchases from the petitioner, but there is no evidence that Morris Dritch purchased the stock to acquire such business. There is no evidence that the petitioner needed the Ponca Grain business in order to succeed. On the other hand, we know that M. F. Mulroy purchased the Ponca Grain stock to make a profit, and for all that we know, Morris Dritch may also have expected the investment to be profitable. Since Mulroy had no interest in the petitioner, his profit depended upon the success of Ponca Grain, and he could use his influence as president and as an owner of one-half of the stock (including that owned by his sons) to assure that success. Hence, even if we look at the acquisition as of 1958, the petitioner has failed to prove that the Ponca Grain stock was not purchased as an investment. Since the petitioner has failed to prove its purpose in acquiring the Ponca Grain stock, we need not decide whether the petitioner is correct *93 in its view that the rationale of the "source of supply" cases is sufficiently broad to apply to a situation where corporate securities are purchased to acquire a captive customer. Compare, Hagan v. United States, 221 F. Supp. 248 (W.D. Ark. 1963), with Duffey v. Lethert, an unreported case ( D.C. Minn. 1963, 11 A.F.T.R. 2d 1317). See also, Weather-Seal, Inc., T.C. Memo. 1963-102. In order to reflect the agreement of the parties concerning other adjustments in the notice of deficiency, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩